WALTON *v.* WILHELM ET AL.

[No. 17,983.   Filed April 3, 1950.]

*Linder & Kistler,* of Indianapolis, for appellant.

*J. Emmett McManamon,* Attorney General, *James A. Watson,* Deputy Attorney General, *Glen F. Kline,* Chief Counsel, Employment Security Division, for appellees.

DRAPER, C. J.—The appellant is a carpenter. He has long maintained a home in Indianapolis and one in Florida. Because of his wife's health he has gone to Florida every winter for ten years. He was laid off in Indianapolis on November 10, 1948, because the job upon which he was working was completed. He was told there would be little carpenter work available

in Indianapolis during the winter, and that many carpenters were out of work. The Unemployment Division advised him he could transfer his claim to Florida. He did so, and he himself arrived in Florida on November 14, 1948. He reported regularly at the employment office and at the union hiring hall and testified he otherwise made some effort to seek employment, but found no work and was offered none. He expressed a willingness to accept work anywhere in Florida, and although he preferred a union job, said he would take non-union employment if necessary. He insisted he was not "one of those Florida chiselers." He received compensation for the period between November 20, 1948, and January 15, 1949, when the benefits were discontinued. The period during which he would have been entitled to benefits, if qualified to receive them, expired on March 27, 1949. Although benefits were discontinued on January 15, 1949, he remained in Florida until the last of March, 1949, then returned to Indianapolis where he found work immediately. He seeks benefits for the ten weeks between January 15, 1949, and March 27, 1949, or during the time he remained in Florida after benefits were discontinued.

In denying benefits, the Board found as follows:

"The Review Board finds that claimant had for a number of years gone to Florida to take his wife for her health and to be with her, but by so doing, he placed undue restrictions on his availability for work by temporarily removing himself to an area where work was not available, and there was not a reasonable expectancy that it would become available for a temporary resident. Had he chosen to remain in Indianapolis, his permanent residence, during the winter months he would have had a greater expectancy of securing work.

"The Board consequently finds that the claimant detached himself from any labor market and was not available for work."

The appellant had the burden of establishing his "availability for work" within the meaning of Burns' 1933 (1949 Supp.), § 52-1538b. Therefore, like any other party who has the burden of proof and who has been unsuccessful below, he comes to this court under the obligation of showing that the evidence, as construed most favorably to his adversary, entitled him to relief which was denied him. *Haynes* v. *Comm.* (1944), 353 Mo. 540, 183 S. W. 2d 77; *Copeland* v. *Comm.* (1946), 197 Okla. 429, 172 P. 2d 420; *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 14 N. E. 2d 905; *Pearson Co.* v. *Cohen* (1949), 118 Ind. App. 699, 83 N. E. 2d 433.

The phrase "available for work" is not defined by statute, nor are we able to formulate a definition thereof which will serve as an infallible guide. Whether an individual is "available for work" within the meaning of our statute must necessarily depend in each case upon the facts and circumstances surrounding that case, considered against the background of the purposes of the legislation and the objectives at which it aims.

Claiming, registering and reporting are necessary prerequisites to the right to receive benefits. "Availability for work" is an added requirement. A claimant must be deemed unavailable for work under certain circumstances outlined by the statute, but it is not provided that only the circumstances so outlined shall be sufficient to render a claimant unavailable, and so we may assume that the presence or absence of other facts and circumstances may be sufficient to justify a refusal of benefits on the ground of "unavailability."

We think availability involves an actual attachment to the labor force. A good faith offering of the claim-

ant's services is a prerequisite to availability. Exposure to the labor market must be sincere and unequivocal. A professed willingness to work, accompanied by or following conduct wholly inconsistent therewith will not serve to establish availability. Good faith cannot exist independently of honest intention.

We have repeatedly said the law was not designed for the benefit of those who are voluntarily idle. It was intended to alleviate the distressing consequences of involuntary unemployment. It is for the relief of those unemployed through no "fault" of their own. While meritorious claims should not be denied, the humane purposes of the act should not be perverted by pretense.

We agree with the Board that a claimant cannot be considered to be involuntarily out of employment if he voluntarily leaves an area where suitable work is available and goes to an area where work opportunities are entirely lacking, or are so remote as to be substantially non-existent. He cannot be considered to be unemployed through no "fault" of his own if he leaves an area where suitable employment is available, and goes to another location for recreational purposes or because of domestic obligations, wholly disassociated from any interest in the existence of work opportunities there. It has been said that the essence of statutory construction is to find the thought beneath the words. If that be true, when the legislature said in § 1507 of the Act that an individual who left work because of marital obligations would not be entitled to benefits, it did not mean only that one who left a present employment for that reason would be disentitled. It meant also that one who abandoned *work opportunities* for that reason would be disentitled.

The duty to determine the facts has been delegated to the Board. A realistic interpretation of the facts and circumstances in evidence is absolutely essential to the successful operation of the plan.

Of course the Board may not disregard or refuse to consider uncontradicted testimony, but it is not always necessary, in order for a conflict to exist, that testimony be directly contradicted or denied by other testimony. In its search for the truth the Board has the right to consider the interest of the witness; the probability or improbability of his assertions in the light of proved or admitted facts; the general situation as shown by all of the surrounding circumstances; the conditions or compulsions under which the witness acted and under which he testifies; his prejudices, if any, and his desires; his apparent forth-rightness or lack thereof; and many other factors. *Haynes* v. *Brown* (1950), 120 Ind. App. 184, 88 N. E. 2d 795. It is impossible for us to draw a clear line of division between availability and unavailability. If the evidence produced by a claimant leaves the Board unconvinced of the justice of his claim, or convinces the Board that he is not one of those who come *within* the true spirit and purpose of the Act, and the evidence is not such that reasonable men would be bound to reach a different result, we are not at liberty to disturb a finding against the claimant on the question of availability.

The Board found that the claimant, because of marital obligations, abandoned existing work opportunities to go temporarily to an area where no work was available and there was no reasonable expectancy that it would become available to him, and that he was therefore not available for work. We cannot say the evidence, together with the inferences that might logically be drawn therefrom, was such as to compel a different finding.

The appellant has cited two cases in support of his position in this appeal. See *Reger* v. *Administrator* (1946), 132 Conn. 647, 46 A. 2d 844; *Sturdevant Unemployment Compensation Case* (1946), 158 Pa. Super. 548, 45 A. 2d 898. In each of those cases a married woman voluntarily left a position and journeyed to another state to be with her husband, who was in the armed forces. Both were impelled to do so by marital obligations. Neither found new employment and it was held in each case that the claimant was entitled to benefits. Under our statute neither woman would be entitled to benefits unless the denial thereof was, for good cause shown, waived or modified by the Board. Burns' 1933 (1949 Supp.), § 52-1539f. In neither of those cases were the triers of the fact or the courts confronted with the fundamental problem presented by the case at bar. In the Sturdevant case the court said:

> "The mere fact that a claimant has moved from one locality to another does not create a basis for holding him unavailable for work. If he registers for work in the new locality, *and labor-market conditions there afford reasonable opportunities for work,* he is available for work." (Emphasis supplied.)

We are in accord with that view. But we cannot apply the broad concept of "availability" found in those cases to the case at bar, for as we have said, this case seems to turn upon a factor not present in either of them.

Complaint is made that official notice was taken by the Referee of the lack of work opportunities in Florida and the existence thereof in Indianapolis. It is true that courts should exercise great caution in taking judicial notice of facts subject to proof without evidence to support the same. *Fletcher, etc.,*

*Trust Co.* v. *American State Bank* (1925), 196 Ind. 118, 147 N. E. 524. But by express legislative mandate the rights of the parties in these cases need not be determined under common law or statutory rules of evidence and other technical rules of procedure. Burns' 1933 (1947 Supp.), § 52-1542e. In *Sturdevant Unemployment Compensation Case, supra,* the court said:

> "The determination of availability is not wholly an administrative function, but it is largely a question of fact. Some aspects of the question, e.g., the conditions in a given labor market, the ability of a worker to perform specified types of work, the time or work-shift which is most suitable for him, and many similar matters, are certainly pure questions of fact. Many integrants enter into the calculation, some resting on testimony, *others upon specialized data and information peculiarly accessible to administrative agencies, and of which they may take official notice just as a court may take judicial notice.* Of course, such information should be placed upon the record, and the parties apprised of it, so that the essentials of a fair hearing are preserved. Our examination of the record in contests concerning availability must ordinarily be limited to the determination whether the board's findings of fact are sustained by the evidence. And following familiar principles, upon an appeal to us, a claimant, whose claim has been sustained by the board, is entitled to the benefit of all the evidence in his favor and the reasonable inferences that may be drawn from it." (Emphasis supplied)

We approve that statement and find no fault with the official notice taken in this case, particularly in view of the fact that the decision does not rest solely upon the official notice taken. The claimant himself furnished ample evidence of the absence of work opportunities for him in Florida, and the fact that he obtained employment immediately upon his return to Indianapolis would certainly be some evi-

dence of the existence of a market for his services in that city.

Award affirmed.

NOTE.—Reported in 91 N. E. 2d 373.