130 Ind. App. 172 (1959)
162 N.E.2d 717
NORDHOFF
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION ET AL.
No. 19,189.
Court of Appeals of Indiana.
Filed December 16, 1959.
*175 Nordhoff & Nordhoff, of Jasper, and McNutt, Hurt & Blue, of Martinsville, for appellant.
Edwin K. Steers, Attorney General and Keith Campbell, Deputy Attorney General, for appellee Review Board.
George P. Ryan, Alan T. Nolan and Ross, McCord, Ice & Miller, of counsel, all of Indianapolis, for appellee General Electric Company.
KELLEY, J.
This cause was previously before us. See 129 Ind. App. 378 (1959), 156 N.E.2d 787. We then remanded the same to the Review Board with instructions to vacate the decision appealed from and to enter its conclusions and decision based upon a consideration of all the evidence in the cause. Pursuant to such remand, said Board vacated and set aside its said decision and entered its conclusions and decision based upon a consideration of all such evidence. At the request of the appellant said Board duly certified its findings, conclusions and decision to the Clerk of this court, as a part of the record herein, all as provided for in said remand.
The cause now comes to us for determination upon such certification. The statement of facts, findings and conclusions, and decision of the Board, as certified, are in material parts as follows:
"STATEMENT OF FACTS: Claimant was employed by the employer herein for approximately *176 five and a half years. At all times mentioned herein claimant was a resident near the city of Jasper, Indiana and she first worked for the employer in the city of Huntingburg, Indiana. Thereafter, the employer moved its plant to Tell City, Indiana where the claimant worked from 1954 until May 29, 1957, commuting a distance of 42 miles each way. On said latter date, claimant was granted a leave of absence due to her pregnancy. The claimant gave birth to her child August 5, 1957, but in view of a company rule the claimant was not eligible to return to her employment until the child became two months of age which, in this instance, would have been October 5, 1957. On October 8, 1957, the employer received a letter from the claimant, stating:
"`Since my pregnancy leave, I have decided not to return to work because it is entirely too far from my home and the trip is too hard on me. I enjoyed working for G.E. and hope my six years of employment was satisfactory too. Thank you.'
"Thereupon, claimant's name was removed from the employment roll and her services terminated. A representative of the employer testified at a hearing before an appeals referee that the claimant was `a very good employee' and could have remained in her employment.
"The claimant testified that about two weeks before she was due to return to work she discovered that her former means of transportation would not be available and she made no other attempt to obtain transportation except to contact one other person. The claimant, at the hearing before the referee, contended that her real reason for terminating her employment was due to lack of transportation and that it was too expensive for her to operate her automobile.
Q. `Now if you had lost your transportation on or about October 5, 1957, why did you not give that reason to the employer at the time that you indicated that you were terminating your employment with them?

*177 A. `Well, I just didn't think it was necessary since I didn't have a way, that is why I wrote that in, and by saying it was too hard alone  I meant the trip alone  to travel alone was too hard.
Q. `Are you trying to tell me if it weren't for the fact that it was too expensive that you would be willing to drive your own car to Tell City?
A. `Yes, if the expenses wouldn't be so high.' (Tr. p. 25, L. 17-34 and p. 26, 1.1).
"The claimant had been paying $6.00 per week for transportation to and from work and she was of the opinion that if she operated the family car it would be in excess of said amount. There is no evidence that claimant made any attempt to obtain `riders' for the purpose of defraying the expenses of transportation. The claimant had no prospects of other employment at the time she quit and, in fact, had only made a couple of inquiries regarding work since the time she quit on October 8, 1957 up to and including the date of the hearing before the referee November 20, 1957. On said latter date, the claimant still had no prospects of employment although there still was work available for her with the employer herein.
"FINDINGS AND CONCLUSIONS: The Board finds that the claimant, a resident of the city of Jasper, Indiana, was employed by the employer herein for approximately five and a half years and, from 1954 until May 29, 1957, she commuted as a passenger in a privately operated automobile to her place of employment in Tell City, Indiana, a distance of 42 miles.
"It is further found that the claimant had been granted a leave of absence due to her pregnancy, which leave terminated on October 5, 1957.
"It is further found that on October 8, 1957 the employer received a letter from the claimant advising that she had decided to quit her employment for the reason: `... it is entirely too far from my home and the trip is too hard on me.'

*178 "It is further found that the claimant contends that she was physically able to work on said date of October 8, 1957 and there is no evidence that the `trip' would be injurious to her health.
"It is further found that claimant's contention at the hearing before the referee, that the real reason for quitting was due to lack of transportation, is without merit for the evidence reveals that the claimant had an automobile available to her.
"It is further found that claimant's decision to not use an automobile available to her was for economic reasons.
"It is further found that the claimant only contacted one person other than her prior driver as to the possibility of obtaining a ride back and forth to work.
"It is further found, assuming lack of transportation was claimant's real cause for quitting, that the employer had no knowledge or reason to believe from claimant's letter that there was any transportation difficulty.
"It is further found that the claimant failed to advise the employer of her difficulty in obtaining transportation or to ask for an extended leave of absence.
"The Board concludes that the claimant failed to make a reasonable effort to obtain transportation and continue in her employment.
"It is further concluded that the claimant, by her actions, failed to afford the employer the opportunity to assist the claimant in obtaining transportation.
"Wherefore, the Board concludes from all the evidence that the claimant has failed in her burden of proving that she had good cause in voluntarily quitting her employment on October 8, 1957.
"DECISION: The decision of the referee is reversed. It is held that the claimant left her work voluntarily and without good cause on October 8, 1957."
It appears from the findings of the Board that at the time appellant was to return to her employment she *179 advised her employer, appellee General Electric Company, by letter, that "I have decided not to return to work because it is entirely too far from home and the trip is too hard on me." Upon receipt of that letter, appellant's name was removed from said employer's employment roll and her services terminated. At a later time, at the hearing before the referee, appellant gave as her reason for quitting her employment that she lacked transportation and it was too expensive for her to operate her own automobile. She further said that by her statement in said letter that the trip was too hard on her she meant that it was too hard to travel alone. Continuing, appellant said at the mentioned hearing that she would be willing to drive her own car "if the expenses wouldn't be so high." Other than a contact with one person other than her former rider, appellant had made no attempt to obtain transportation to her work and had made no attempt to obtain "riders" in her own car to help defray the expenses of her transportation. She did not advise her said employer of her transportation difficulties, other than as stated in her said letter, and she made no request for extended leave of absence.
As noted, the Board concluded that appellant had failed to make a reasonable effort to obtain transportation and continue her employment; and that she left her work voluntarily and without good cause.
As to all questions of fact, the decision of the Review Board is conclusive and binding on us. Sec. 52-1542K., Burns' 1951 Replacement. It must be conceded that under the conclusive facts found by the Board, appellant quit her work voluntarily. In her letter to her employer, advising it of her employment termination, she said: "I have decided not to return to work." The stated reasons in the letter which *180 apparently prompted her decision do not appear to be such as to render her decision involuntary. Her letter contained no statement or expression of any circumstance of a "compelling or necessitous" nature which impelled her to give up her employment, nor any regret because thereof, nor wish for continued employment. Rather, it stated that she enjoyed working for said employer and that she hoped her six years of employment had been satisfactory. The Board was entitled, we think, to draw the reasonable inference from the letter that at the time it was written, appellant had given thought to the matter, including the distance of travel and the effect thereof upon her, and had definitely and finally concluded that she did not personally desire to return to her work. If appellant had not afterward applied for unemployment benefits under the aforesaid Act, there would have been no question but that at the time of her letter, she had voluntarily left her employment. And had there been no further evidence in the matter, it would seem to have logically followed as a justifiable inference from her letter that from the standpoint of her employment, she had voluntarily ceased the same of her own will and desire without compulsion of compelling or necessitous circumstances. The aforesaid permissible inference by the Board is further supported by the facts, found by the Board, that appellant made no disclosure of any transportation difficulty to her employer; that she afforded her employer no opportunity to assist her in obtaining transportation; that she requested no extended leave of absence from her employment to arrange transportation; and that she contacted only one person other than her former rider concerning the possibility of transportation. All these facts tend to furnish an inference of appellant's intention to voluntarily quit work *181 at the time her letter was written; and they tend to establish a further inference that at that time she entertained no idea of continued employment by said employer.
After the Claims Deputy at the local office had suspended her claimed benefits on the ground that she "voluntarily quit without good cause on 10-8-57," appellant took her appeal to the Appeals Referee, and there, apparently, for the first time stated that her real reason for quitting was lack of transportation and that her former means of transportation with a rider was no longer available. Her testimony further developed, according to the findings and statement of the Board, that she had a family car which she could operate and would be willing to drive if the expenses "wouldn't be so high." This latter statement apparently had reference to the fact that the operation of her own car would cost in excess of the $6.00 per week paid by appellant for her former transportation with a rider. That appellant possessed an automobile which she could operate and, but for the expense thereof, was willing to use in driving to her place of employment, is of influence, under the circumstances affecting the issue presented on this appeal, only as an evidentiary factor bearing on the question before the Board of whether appellant's termination of her employment was with good cause.
The issue submitted by appellant's claim for benefits under the Act was that she voluntarily quit her employment with good cause. Of this issue she undertook the burden and having failed to sustain that burden, appellant must now exhibit that she was denied relief to which the evidence favorable to the finding entitled her. Walton v. Wilhelm et al. (1950), 120 Ind. App. 218, 91 N.E.2d 373. The determination *182 of that issue was a fact question for the Board. As the fact finder, it was the Board's duty and prerogative to weigh the evidence and to resolve any inconsistencies and conflicts appearing in the evidence. Although such inconsistency or conflict may arise from the undisputed testimony of a single witness, the Board's duty to resolve the same persists unaffected. Himelstein Bros., Inc. v. The Texas Co. (1955), 125 Ind. App. 448, 456, 125 N.E.2d 820; McKee v. Mutual Life Insurance Company of New York (1943), 222 Ind. 10, 51 N.E.2d 474; Cole v. Sheehan Construction Company (1944), 222 Ind. 274, 280, 53 N.E.2d 172.
The authorities dealing with the subject seem to declare no general definition of "good cause" or the essential requisites thereof applicable to all cases and under all circumstances. Nor does the Act here involved, § 52-1539, Burns Cum. Suppl. 1959, and § 52-1525, et seq., furnish any definition thereof. Consequently, it seems that whether "good cause" existed for the voluntary cessation of employment under the circumstances appearing in a particular case is an ultimate fact to be found by the body or tribunal authorized to hear and determine the cause. Youngstown S. & T. Co. v. Rev. Bd., E.S.D. (1954), 124 Ind. App. 273, 277, 278, 116 N.E.2d 650; Welch v. Review Board of Indiana, etc. (1944), 115 Ind. App. 230, 235, 58 N.E.2d 363.
Here the Board, in the discharge of its statutory duties and functions, was required, for the purpose of making a determination of the issue presented, to consider, weigh and resolve all the facts and circumstances made apparent by all the evidence, including any inconsistencies and conflicts appearing in the evidence given by appellant, and to arrive at its ultimate conclusion by the light of the expressed purposes *183 of the Employment Security Act, above referred to, and the beneficent objective thereof. That purpose and objective, as has been declared by our court in Walton v. Wilhelm, supra, and American Central Mfg. Corp. v. Review Board, etc. (1949), 119 Ind. App. 430, 88 N.E.2d 256, is to alleviate the distressing consequences to the health, welfare, morale and public order of the involved individual and the people generally brought about by unemployment and consequent loss of wages and income of those who become unemployed through no fault of their own. And, as stated in Walton v. Wilhelm, supra, while meritorious claims should not be denied, the humane purposes of the Act should not be perverted by pretense.
Since appellant bore the burden of establishing by competent and substantive evidence of probative value her assumed issue that she voluntarily quit her employment with or for good cause, and having received a negative finding thereon, we are bound to maintain inviolate the ultimate conclusion and decision of the Board unless reasonable men would be bound to reach a different conclusion on the evidence. Youngstown S. & T. Co. v. Review Bd., E.S.D., supra. The evidence before the Board in this action was susceptible of varying inferences. Appellant has stated in her brief, as a part of her definition of "good cause," that the "claimant must show good faith" and "the cause must be reasonable" and "claimant's conduct must be such as to evidence a desire to be at work and self-supporting." All of these suggested elements of "good cause" are factual matters to be arrived at by the Board upon the whole of the evidence and the reasonable and permissible inferences deductible therefrom. The oral testimony of appellant was uncontradicted but, as we said in Wilson v. Indiana Gas & Water *184 Co., Inc. (1955), 126 Ind. App. 302, 130 N.E.2d 498, "though a particular item of evidence is not expressly or directly contradicted, this does not prevent the trier from taking into consideration all of the other evidence including circumstances and surroundings that might in any way affect the weight or credibility of such evidence and the trier may disregard oral evidence if considered unreasonable or inconsistent with facts and circumstances shown by other evidence in the case." It follows from this announced rule that, upon all the evidence in this record and the facts as found by the Board, we cannot say, conclusively, in opposition to the decision of the Board, either that appellant showed good faith, or that her cause for quitting her work was reasonable, or that her conduct was such as to evidence her desire to be at work and self-supporting, or that she voluntarily left her work with good cause.
Appellant says in her argument that "the Board members could search the record minutely and they still could not find anywhere therein any evidence of probative value to support its arbitrary decision." However, the length of appellant's argument on her proposal is the quoted statement just recited. She makes no reference to nor points out any part of the evidence in the record, nor does she mention any particular finding or findings of the Board which she deems unsupported by the evidence. We are, therefore, left uninformed as to the facts upon which she may have thought to predicate her said proposition. She also states that a reading of the finding of ultimate facts by the Board shows "that all of the Board's so-called findings were speculative and full of conjecture as well as its conclusions of law which are questionable. But again appellant goes no farther than to make the *185 quoted statement and gives us no assistance by application of the premise made.
The decision of the Board herein submitted for review must be affirmed.
Affirmed. Bierly, Gonas, Smith, JJ., concur.
NOTE.  Reported in 162 N.E.2d 717.