MARK LEWIS v. REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION.

[No. 1171A224. Filed May 30, 1972.]

188

*Evan Dee Goodman,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellees.

BUCHANAN, J.—STATEMENT OF THE CASE AND FACTS—Review is sought from a decision by the Review Board of the Indiana Employment Security Division (the Review Board) denying claimant-appellant Mark Lewis' (Lewis) benefits because he voluntarily left employment with good cause not attributable to the employer.

Lewis is married and 66 years of age. For five years prior to December 24, 1970, he was employed by the Broadway Tobacco Company (Broadway) in East Chicago, Indiana. In September of 1970, Lewis sold his home in East Chicago and made plans to move to Chicago, Illinois at the end of the year. His plans to relocate were motivated by his failing eyesight and a desire to be with his children before he became totally blind.

Lewis' last day at work for Broadway was December 24, 1970. He was neither discharged nor laid off. Moreover, he did not inform Broadway that December 24 was his last day

of work. Near the end of December, Lewis completed his move to Chicago and never returned to work for Broadway.

On February 5, 1971, Lewis applied to the State of Indiana for unemployment compensation. His claim was denied, and thereafter Lewis requested and was granted a hearing before an appeals referee, Mr. D. Colombatto (Colombatto). During the hearing Lewis stated that because his failing eyesight prevented him from driving a car, he did not return to work with Broadway and he felt that Broadway should have approached him regarding commuting arrangements and his continued employment.

Colombatto interrupted Lewis' testimony on several occasions. The following are portions of the transcript taken from Lewis' testimony and are examples of the interruptions to which Lewis objects as being a denial of due process:

"Q. Now, did you ever work for them after you moved to Chicago?

A. No.

Q. Why not?

A. Because they never approached me, and I don't think they needed me.

Q. What do you mean they didn't approach you?

A. Because I was entitled to the courtesy of that.

Q. Why?

A. I'll tell you why, because . . .

Q. You were working there, did they, they didn't tell you you had to stop working did they?

A. Just a minute. To a certain degree they felt obligated to us, I'll tell you why. You see, is it all right to talk about this? They had a fire which very nearly put them out of business, we were also in business in competition.
\* \* \*

A. They felt obligated. First of all, my vision was becoming very bad, I was becoming partially blind, I know I was, I went to my old clinic . . .

Q. Well, I'm sorry, you see I don't need all this, you've made your point, you feel they should have come to get you, is that right?

A. Right.

Q. Well, did you ever give them notice that you were leaving the job?

A. No.

Q. You didn't give them notice?

A. No.

Q. I see, all right then . . .

A. Excuse me, can I say a word or two?

Q. Wait for the question. * * *
* * *

Q. Now just add now, say what you want to that and then I'm going to close the hearing, because that's all we need.

A. I would like to add something to this, you see . . .

Q. Well now just a minute, remember what I said, you have to show that the cause for leaving was attributable to the employer.

A. Yes, absolutely, because I feel, I felt that they should have approached me, they had all September, they had all of October . . .

Q. If they had asked you to stay, would you have stayed?

A. Yes, because they could have made a certain agreement, they could have picked me up at the South Shore Station at East Chicago, Indiana and said we'll pick you up, if they thought they needed me, because they felt, now I'm going to add a few more words . . .

Q. No, no . . .

A They felt, this was a Godsend as far as they were concerned, because you see . . .

Q. In other words you feel they should have made it clear to you that they'd pick you up or something?

A. Right, I was entitled to that.

Q. Because of the . . .

A. Because of the distance, I don't drive, my vision is impaired, I have very poor vision and I have no vision in the left eye from diabetes."

On September 9, 1971, the record of the previous proceedings was reviewed by the Review Board of the Indiana Em-

ployment Security Division (the Review Board). On that date the Review Board found, among other things, that: Lewis voluntarily terminated his employment with Broadway without notice and did not contact Broadway thereafter; there was no evidence to show that Lewis' job was in jeopardy or that he had prospects for other employment; and that, although Lewis left his employment voluntarily with good cause, his separation was not attributable to Broadway within the meaning of the Employment Security Act. The Review Board then affirmed the denial of Lewis' claim.

Lewis now seeks judicial review of the Review Board's decision.

## ISSUES

ISSUE ONE. Did the interruptions of Lewis' testimony by Colombatto deny Lewis due process of law?

ISSUE TWO. Was the Review Board correct in finding that Lewis' unemployment was not attributable to Broadway?

As to ISSUE ONE, Lewis contends that he was denied due process because Colombatto's interruptions of Lewis' testimony prevented complete answers.

The Board on the other hand, argues that the presentation of evidence is within the discretion of the referee. Consequently, Lewis was not denied due process of law.

As to ISSUE TWO, Lewis asserts that the Review Board's decision is not supported by substantial evidence that Lewis quit his job voluntarily, without good cause.

The Board's position is that Lewis' testimony indicates that he voluntarily terminated his employment without good cause attributable to Broadway. Therefore, the Review Board's decision was supported by substantial evidence of probative value.

\* \* \*

We pause to dispose of a preliminary issue concerning the state of the record in this case. Lewis contends that a certain letter, which Colombatto was to attach to the record, was, in fact, not made part of the record. This letter, written by Lewis, presumably further explained his reasons for terminating his employment with Broadway. Lewis argues that if this letter was considered by the Review Board, then reversible error arose since the Review Board may not consider any evidence extraneous to the record and cites *Jung* v. *Review Bd. of Ind. Empl. Sec. Div.* (1964), 136 Ind. App. 248, 199 N. E. 2d 476.

In *Jung,* there was positive evidence that the Review Board considered in its findings and conclusions a letter extraneous to the record. In the case before us, however, there is no indication that this letter was considered by the Review Board, or that it was even sent by Colombatto to the Review Board.

In the alternative, Lewis argues that if the letter was not considered by the Review Board, then he has the right to know why it was not a part of the record of the evidence. While Ind. Ann. Stat. § 52-1542e (Burns 1964) requires the *Review Board* to keep a full and complete record of all proceedings in connection with a disputed claim, the proper procedure to correct a defective record or to insert evidence improperly omitted is to apply to this court for certiorari pursuant to Rule AP. 15(C). *Krick* v. *Farmers & Merchants Bank of Boswell* (1972), 151 Ind. App. 7, 279 N. E. 2d 254, 262. Having failed to take advantage of the proper procedure for the correction of defects in the record as provided by Rule AP. 15(C), no question is presented.

## DECISION

ISSUE ONE—It is our opinion that Lewis was granted a fair and impartial hearing and that the interruptions of his testimony by Colombatto did not deny him due process of law.

Ind. Ann. Stat. § 52-1542e (Burns 1964) provides:

"52-1542e. DISPUTED CLAIMS — PROCEDURE — NOTICE OF HEARING—CONTINUANCE. The manner in which disputed claims shall be presented and the conduct of hearings and appeals shall be in accordance with regulations prescribed by the board for determining the rights of the parties, *whether or not such regulations conform to common law or statutory rules of evidence and other technical rules of procedure.*" (Emphasis supplied.)

Ind. Ann. Stat. § 52-1544 then grants the authority to the Employment Security Board to administer the provisions of the Employment Security Act and to adopt, amend, or rescind any necessary rules and regulations specified in § 52-1542e, *supra.*

Pursuant to this statutory grant of power, in 1945 the Indiana Employment Security Board adopted Regulation 1003 (Indiana Administrative Rule and Regulation 52-1542b-1), which, in part, provides that:

*"All hearings shall be conducted informally* in order to determine the substantial rights of the parties. *The parties may present such evidence as the referee deems necessary for determining the substantial rights of the parties.* The parties to the appeal may appear in person, by attorney, or duly authorized agent or representative, and shall have the right to examine their own witnesses, present evidence and cross-examine witnesses of the opposing party. Any referee engaged in conducting such a hearing shall have the right to examine all witnesses and may require the parties to produce any available evidence he may deem necessary for proper determination of the case. Where either party fails to appear or where either party is not represented by an attorney or duly authorized agent, it shall be the duty of the referee to examine such party's witnesses, and to cross-examine all witnesses of the other party, in order to insure complete presentation of the case. In general, rules of evidence and procedure for the trial of civil causes shall govern proceedings before a referee or the review board, *but not to such an extent as to obstruct or prevent a full presentation of fact or to jeopardize the rights of any interested party.*" (Emphasis supplied.)

Consequently, the strict rules of evidence and procedure do not apply to administrative proceedings. Such proceedings

must be held on an informal basis in order to determine the substantial rights of all parties involved. Warren v. *Indiana Telephone Co.* (1939), 217 Ind. 93, 26 N. E. 2d 399; *Nordhoff* v. *Review Bd. of Ind. Empl. Sec. Div.* (1958), 129 Ind. App. 378, 156 N. E. 2d 787; *Williamson Co.* v. *Review Bd. of Ind. Empl. Sec. Div.* (1969), 145 Ind. App. 266, 250 N. E. 2d 612.

The presentation of evidence is therefore within the sound discretion of the hearing referee to be admitted as he deems necessary for the proper adjudication of the claim before him.

Whether the procedures used by a hearing referee deny a party due process of law depends not upon a technical examination of his methods of questioning, but, rather, upon whether such methods were fair and whether the evidence taken as a whole supports his conclusion. In *Warren* v. *Indiana Telephone Co.*, *supra*, our Supreme Court stated the test as such:

> "*In ascertaining whether the finding of the administrative agency meets the requirement of due process, the court will look to the substance rather than the form.* The mode by which the facts were found will be regarded as a means rather than an end, and the finding will not be set aside because the agency did not conform to the court-made formulas of proof . . ." (Emphasis supplied.)

See also: *Guy* v. *Universal Atlas Cement Co.* (1968), 143 Ind. App. 318, 240 N. E. 2d 497.

The hearing examiner must of necessity be free to admit and exclude as he deems necessary to further the informal nature of the hearings. If, due to unorthodox methods of examination, the evidence obtained does not support the conclusion reached by the hearing examiner, then due process has been denied. If, on the other hand, the examiner's decision is supported by substantial evidence and it does not appear that reasonable men would be bound to reach a different conclusion, then due process of law has been assured despite the unorthodox

methods used to obtain the evidence. *Warren* v. *Indiana Tele-phone Co., supra; Guy* v. *Universal Atlas Cement Co., supra.*

While examination of isolated examples may ostensibly indicate undue interruption by Colombatto, the testimony taken as a whole does not support the conclusion that Lewis was denied due process. Lewis was allowed to testify why he terminated his employment with Broadway and why he felt that they should approach him regarding commuter arrangements, i.e., because of his help during a disastrous fire. Moreover, Colombatto opened the door to another page and a half of testimony by Lewis near the end of the hearing when he said:

"Q. Now just add now, say what you want to that and then I'm going to close the hearing, because that's all we need."

Judge Sullivan recently considered the effect on due process of law when a hearing examiner interrupted a claimant's answers during an unemployment compensation hearing in *Ladd* v. *Review Bd. of Ind. Empl. Sec. Div.* (1971), 150 Ind. App. 632, 276 N. E. 2d 871. In sustaining the referee's questioning, he said:

"While wide latitude is allowed an administrative body in the conduct of its hearings, due procees of law must be accorded to those whose rights are affected. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399. If the referee in this case cut off the appellant's answers or did not permit full answers to questions concerning availability for employment, a denial of due process would certainly have occurred. There is absolutely no indication of record, however, to substantiate appellant's naked allegation."

Here, as in *Ladd*, there is no indication from a review of the entire testimony, that Lewis was not permitted full answers to questions concerning his reasons for terminating his employment, including some irrelevant statements.

ISSUE TWO—It is our opinion that the Review Board was correct in finding that Lewis voluntarily terminated his em-

ployment with Broadway without good cause attributable to Broadway.

Where it does not appear that reasonable men would be bound to reach a different conclusion, this court will be bound by the factual findings of the Review Board. We may not weigh the evidence and we may consider only that evidence most favorable to the Board's decision. *Jung* v. *Review Board of the Ind. Empl. Sec. Div.* (1964), 136 Ind. App. 248, 199 N. E. 2d 476. Moreover, on review of a negative decision, the claimant has the burden of showing that upon the evidence submitted, the Board erroneously denied him relief to which he was entitled. *Jones* v. *Review Board of the Ind. Empl. Sec. Div.* (1968), 143 Ind. App. 64, 238 N. E. 2d 291.

It was the intention of the legislature to deny benefits of the Employment Security Act to those individuals who are *unemployed without good cause* attributable to the employer. *Blakely* v. *Review Board of Ind. Empl. Sec. Div.* (1950), 120 Ind. App. 257, 90 N. E. 2d 353; *Abshier* v. *Review Board of the Ind. Empl. Sec. Div.* (1952), 122 Ind. App. 425, 105 N. E. 2d 902. Moreover, the burden is upon the claimant to show that he left his job voluntarily with good cause. *National Furniture Mfg. Co.* v. *Review Bd. of Ind. Empl. Sec. Div.* (1960), 131 Ind. App. 260, 170 N. E. 2d 381.

The question of whether or not an employee voluntarily quit his work with or without good cause within the meaning of the Act is primarily a question of fact for the Review Board. *National Furniture Mfg. Co.* v. *Review Bd. of Ind. Empl. Sec. Div., supra.* In *Geckler* v. *Review Bd. of Ind. Empl. Sec. Div.* (1963), 244 Ind. 473, 193 N. E. 2d 357, our Supreme Court held that:

"* * * the cases hold that '*good cause*,' which justified the voluntary termination of employment and entitles the claimant to compensation, *must be related to the employment,* and thus be *objective* in character. *The cases have not extended the construction of 'good cause' to include*

*purely personal and subjective reasons which are unique to the employee, * * *."* (Emphasis supplied.)

Reviewing the evidence most favorable to the Review Board (which consists solely of Lewis' own testimony), we conclude that Lewis *voluntarily* terminated his employment with Broadway *without good cause* attributable to Broadway within the language of the Indiana Employment Security Act and *Geckler* v. *Review Board, supra.*

During the four months prior to Lewis' relocation in Chicago, Illinois, he never informed Broadway of his plans to leave their employ. Even on his last day of work Lewis still had not informed Broadway that this was his last day. While Lewis argues that the mere moving of his place of residence does not lead to the conclusion that he "quit work," the fact still remains that he never returned to work and that he had no plans to return unless Broadway approached him regarding commuting arrangements from Chicago to East Chicago, Indiana. Even if one assumes that Broadway should have contacted Lewis, the evidence shows that the only knowledge possessed by Broadway of Lewis' plans was that he hold his home. There is no evidence to show that Broadway knew, or even suspected, that Lewis was moving from East Chicago and that he would not return to work for Broadway unless they approached him regarding commuter arrangements. Hence, Lewis left work voluntarily.

Despite the fact that Lewis' relocation to Chicago was motivated by his failing eyesight and a desire to be with his children before he became blind, we are of the opinion that this was not good cause related to his employment within the language of *Geckler* v. *Review Board, supra.* Such a motive was purely a personal and subjective reason unique to Lewis.

A somewhat analogous case to the one before us is *Walton* v. *Wilhelm* (1949), 120 Ind. App. 218, 91 N. E. 2d 373. In *Walton,* the claimant was employed as a carpenter in Indianapolis. Because of his wife's failing health, he accompanied her to Florida every winter for ten years and during the year in

question chose to remain there even though there was greater expectancy of work in the Indianapolis area. In affirming a denial of benefits, this court said:

"We have repeatedly said the law was not designed for the benefit of those who are voluntarily idle. It was intended to alleviate the distressing consequences of involuntary unemployment. It is for the relief of those unemployed through no 'fault' of their own.

"We agree with the Board that a claimant cannot be considered to be involuntarily out of employment if he voluntarily leaves an area where suitable work is available and goes to an area where work opportunities are entirely lacking, . . . *because of domestic obligations, . . .*" (Emphasis supplied).

Quotation of this language from *Walton* is not to imply that we are unsympathetic to Lewis' physical ailments or that he was to blame for the maladies visited upon him. The purpose is to demonstrate that the "good cause" which justifies termination of employment entitling an employee to compensation must objectively relate to the employment and not reasons personal to the employee. *Geckler* v. *Review Board, supra.*

Subjective cause is not "good cause" within the meaning of the Employment Security Act. Thus, there was substantial evidence to support the Board's finding that Lewis voluntarily terminated his employment without good cause attributable to Broadway.

The decision of the Board is therefore affirmed.

White, P.J. and Sullivan, J., concur.

NOTE.—Reported in 282 N. E. 2d 876.