ALLAN LLOYD HENRY *v.* SCHENK MECHANICAL
CONTRACTORS, INC.

[No. 2-175A17. Filed May 13, 1976.]

*Sydney L. Berger, Charles L. Berger,* of Evansville, for appellant.

*Michael McCray, Clark, Statham, McCray & Gowdy,* of Evansville, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Review is sought of a negative Award by the Full Industrial Board of Indiana (the Board) denying compensation to Plaintiff-Appellant, Allan Lloyd Henry (Henry), for injuries received by him while employed by Defendant-Appellee, Schenk Mechanical Contractors, Inc. (Schenk), Henry claiming the Award is contrary to law because his injuries were not intentionally self-inflicted.

We affirm.

## FACTS

The facts and evidence before the Board most favorable to Schenk and the Board's decision are:

On April 26, 1971, at 7:50 A.M., Henry was found severely injured in the bathroom area at the rear of Schenk's premises in Mt. Vernon, Indiana.

Henry filed a Form 9 application for compensation on August 31, 1971. Schenk responded with a Special Answer alleging that "the plaintiff's alleged injury was due to his intentional self-inflicted injury and therefore compensation should not be allowed. . . ."

At the hearing evidence established that on April 26, 1971, Henry was scheduled to report to work at 8:00 A.M. He left home at about 7:00 that morning and arrived at work at approximately 7:30 A.M., no other employees having yet arrived. Henry was discovered shortly thereafter lying in the bathroom area of the premises, wounded and unconscious, by Schenk's manager, Leonard Hufford (Hufford). Hufford immediately summoned medical assistance and an ambulance

arrived and removed Henry from Schenk's premises at approximately 7:55 A.M. On Hufford's arrival, he found the main entrance locked and later unlocked the overhead doors when Henry was removed by an ambulance. Henry's door keys were later discovered on the front seat of his truck with other personal items.

Henry testified he had no recollection whatsoever of April 26, 1971, or the events leading to his injury. He did testify, however, to previously owning Schenk's business, then known as "Henry's Cabinet Shop". The business was not successful. Financial problems caused Henry to borrow money from his mother to keep the business going, and he was finally forced to sell to Schenk in December of 1970 at a disappointing price. There was evidence indicating he was despondent following this unhappy turn of events.

Henry stayed on as an employee of Schenk, i.e., a cabinet maker, but often worked shortened weeks (possibly 30 to 32 hours) due to lack of business.

Testimony at the hearing also revealed a Ram Set tool was found lying on the floor next to Henry at the time of his injury. This tool is a powder actuated, gun-like device mainly used for fastening extremely hard substances such as steel to steel, steel to concrete, wood to steel, and wood to concrete. By depressing both the base plate and the muzzle of the tool (this tool tested at between 40 to 60 pounds of pressure), the trigger releases and the powder charge forces a pin or nail into the material at high velocity. The evidence disclosed Henry's injury resulted from a Ram Set nail being fired from this tool through both temples of Henry's head.

Hufford testified there was no contemplated use for the Ram Set tool on the day in question, either in the bathroom area where Henry was found or in the cabinet installation Henry was to make that day. William Lilleston also gave expert testimony that there were no defects in this specific tool and that due to the facts surrounding Henry's injury, the

injury could not have occurred by the tool discharging if it were dropped or fell on the floor.

The evidence, albeit conflicting, established that some of Henry's personal possessions (eyeglasses and cigarettes) were found on a workbench some distance from the bathroom area where Henry was discovered. A metal box used to store the Ram Set tool was positioned near this bench, and the top tray containing extra Ram Set nails and powder cartridges was on the bench.

Police authorities testified they found no evidence of any foul play or forced entry into Schenk's building.

Detective Korff testified he discovered a Ram Set nail (later identified as the one that wounded Henry) penetrating some cork tile on the south wall of the bathroom area appriximately sixty-six (66) inches from the floor. Scratch marks were later found on the north wall at about the same height (sixty-six (66) inches) and Henry's height was 5'10", or seventy (70) inches.

All three investigating officers "felt" Henry attempted to take his own life . . . that while facing the west wall, he held the handle of the Ram Set tool against the north wall (thus causing the scratch marks), placed his right temple against the base plate and muzzle of the tool and pushed his head against it with sufficient force to cause the tool to fire. The projectile then entered Henry's right temple, exited his left temple and became imbedded in the cork tile on the south wall. Matted hair was later found stuck to the muzzle of the tool.

Lilleston, Schenk's expert, agreed it was possible for Henry to cause injury to himself in the manner described by Detective Korff.

Based on this evidence, the Hearing Member denied compensation to Henry. Thereafter on January 3, 1975, pursuant to Henry's Form 16 Application for Review by the Full Board, the Board entered its Findings of Fact, Conclusions of Law and Award which in pertinent part state:

It is further found that on the 26th day of April, 1971, the Plaintiff herein admitted himself into the premises of the Defendant herein before his regular time to commence work of 8:00 o'clock a.m., at which time no other employee of Defendant had yet arrived for work; that the manager of the business owned by Defendant then arrived on the premises of Defendant and found the main door to the building double-locked, one being a burglar-proof lock with a tumbler that could only be locked from the outside, and said manager had to admit himself to the building with his own keys; that said manager, upon entering the building, discovered Plaintiff lying in the bathroom area of said premises and immediately called for medical assistance and an ambulance arrived and removed Plaintiff from Defendant's premises prior to the time of his regular work commencement of 8:00 o'clock a.m.; that in order for the ambulance to remove Plaintiff from the premises, said manager had to unlock the overhead doors which were also locked at the time he had arrived on said premises; that Plaintiff's keys to the building were later found by police officials and said manager lying in the front seat of Plaintiff's truck which was parked outside the building, indicating that Plaintiff had unlocked the building and then placed his keys which he had used to unlock said building in the front seat of his truck and then proceeded inside the building on the premises, locking the door behind him; that there was no evidence of forced entry into said building.

It is further found that another employee of Defendant arrived at Defendant's premises shortly after Plaintiff had been removed in an ambulance and discovered a Ram Set tool lying on the floor of the said bathroom area where Plaintiff had been found, which Ram Set tool was normally kept in the front part of the building, indicating that Plaintiff had removed the Ram Set tool from a metal box positioned near a work bench; that Plaintiff had left near said work bench his eyeglasses and cigarettes; that the police authorities were then summoned to the scene and conducted a thorough investigation of the facts surrounding the occurrence, at which time there was discovered a Ram Set nail or projectile which had been discharged from the said Ram Set gun, penetrating some cork tile on a storage shelf approximately sixty-six (66) inches from the floor; that Plaintiff's height was determined to be approximately seventy (70) inches, or 5'10"; that after being removed from the premises of Defendant, Plaintiff was taken to Welborn Hospital in Evansville, Indiana; that the attend-

ing physician who performed surgery at that time upon Plaintiff described a wound in Plaintiff's temple, indicating entry of a Ram Set projectile at the right temple and exit at the left temple and that there was green plastic material embedded in Plaintiff's scalp; that it is further found that a green plastic material was a part of the Ram Set tool projectile such as was found in the cork tile on the storage shelf on Defendant's premises in the area where Plaintiff was found at the time of his injury and that there was matted hair and blood on the muzzle of the said Ram Set tool, all indicating that the Ram Set tool was in close proximity to Plaintiff's head at the time of the injury; that there was evidence presented by Defendant that there had been no malfunction in the specific Ram Set tool; that the police officers who conducted the police investigation testified that they found no evidence of foul play or forced entry into the building; that there was testimony given by a Ram Set tool expert witness that due to the facts surrounding the circumstances of Plaintiff's injury, including the description of the wound and its location, Plaintiff's said injury would not have occurred by said Ram Set tool discharging or firing if it were dropped or fell on the floor of Defendant's premises.

It is further found that as a result of his injury, Plaintiff sustained brain damage and was unable to remember what happened on the day of the occurrence or at the time of his injury; that Plaintiff had once owned the business belonging to the Defendant herein and had had financial reverses and had borrowed money from his mother in order to operate said business but was unable to continue the operation with financial success; that Plaintiff then sold the business to the Defendant herein on the monetary terms of the Defendant and became an employee of Defendant instead of the owner of the business; that, thereafter, Defendant did not have enough cabinet work to keep Plaintiff busy and employed full time and that Plaintiff had not desired to do any other type of work for Defendant other than cabinet making.

It is further found that Plaintiff's said injury of April 26, 1971 did not arise out of and in the course of his employment with the Defendant herein; that Plaintiff's said injury was intentionally self-inflicted when Plaintiff attempted suicide by causing a Ram Set tool to discharge a projectile into his right temple, said projectile then exiting at approximately the same level from his left temple, then penerating the cork tile on the storage shelf located on Defendant's

premises; that Plaintiff then fell to the floor of the bathroom area and the Ram Set tool was found adjacent to his location on the floor.

It is further found that Defendant sustained his burden of proof on his Special Answer, filed on December 6, 1971, that Plaintiff's said injury of April 26, 1971 was not an accidental injury arising out of and in the course of his employment with the Defendant and that Plaintiff's injury was intentionally self-inflicted while attempting suicide; that Plaintiff failed to sustain his burden of proof on his Form 9 Application for the Adjustment of Claim for Compensation, filed on August 31, 1971, that Plaintiff's said injury of April 26, 1971 arose out of and in the course of his employment with the Defendant herein.

Said Full Industrial Board of Indiana now finds for the Defendant and against the Plaintiff on Defendant's Special Answer, filed on December 6, 1971, and for the Defendant and against the Plaintiff on Plaintiff's Form 9 Application for the Adjustment of Claim for Compensation filed on August 31, 1971.

## AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that the Plaintiff shall take nothing by his Form 9 Application for the Adjustment of Claim for Compensation, filed on the 31st day of August, 1971.

Henry appeals.

## ISSUE

Did the Board err in denying compensation and concluding Henry's injury was intentionally self-inflicted?

Henry contends there is no competent evidence of substantial and probative value to support the Board's decision that his wounds were intentionally self-inflicted. He asserts the Board failed to apply the common law presumption that an employee charged with the performance of a duty and found injured at the place where his duty may have required him to be, was injured in the course of and as a consequence of his employment. He further argues the erroneous admission, over proper objection, of certain evidence including the police officers' opinion testimony that Henry attempted to

take his own life, portions of Dr. James Franco's testimony and written medical records concerning Henry's injury, and Detective Lashbrook's entire post-hearing deposition regarding a pre-hearing and post-hearing conversation Lashbrook had with Gilbert Harris, a witness and neighbor of Henry.

Schenk responds that substantial probative evidence does support the Board's decision, that it was not error to admit the evidence over Henry's objections and that the presumption, although applied, was clearly rebutted by the evidence presented at the hearing.

## DECISION

*CONCLUSION*—It is our opinion the Board's decision is not contrary to law.

While Henry must shoulder the burden of proving his right to compensation in the first instance, *see, B.P.O. Elks, #209* v. *Sponholtz* (1969), 144 Ind. App. 150, 244 N.E.2d 923; *Stanley, et al.* v. *Riggs Equipment Company, Inc.* (1961), 133 Ind. App. 86, 178 N.E.2d 766; SMALL, WORKMEN'S COMPENSATION LAW OF INDIANA § 12.6, p. 385 (1950) (and cases cited therein), Schenk must prove the allegations in his Special Answer. *See, DeMichaeli & Associates* v. *Sanders* (1976), 167 Ind. App. 669, 340 N.E.2d 796; *Motor Freight Corp.* v. *Jarvis* (1975), 163 Ind. App. 442, 324 N.E.2d 500; IC 1971, 22-3-2-8 (Burns Code Ed.). The Board as the finder of fact concluded that Henry failed and Schenk succeeded. Henry challenges both decisions but we need only review the Board's affirmative decision on Schenk's Special Answer that Henry's injury was intentionally self-inflicted to refute his attacks. In doing so we require only a substantial factual foundation to affirm the Award. *See, Motor Freight Corp.* v. *Jarvis, supra; Bohn Aluminum & Brass Co.* v. *Kinney* (1974), 161 Ind. App. 128, 314 N.E.2d 780; *Blue Ribbon Pie Kitchens, Inc.* v. *Long et al.* (1952), 230 Ind. 257, 103 N.E.2d 205; *Warren* v. *Indiana Telephone Co.* (1940),

217 Ind. 93, 26 N.E.2d 399; *Vonnegut Hardware Co.* v. *Rose* (1918), 68 Ind. App. 385, 120 N.E. 608.

As stated in *Pollock* v. *Studebaker Corp.* (1951), 230 Ind. 622, 105 N.E.2d 513, questions of sufficiency of the evidence require only

> . . . an examination of the evidence to ascertain whether the finding of the Industrial Board does not rest upon a substantial factual foundation. We may reverse the award only . . . (1) If it should appear that the evidence upon which the Industrial Board acted was devoid of probative value; (2) That the quantum of legitimate evidence was so proportionately meager as to show that the finding does not rest upon a rational basis or; (3) That the result must have been substantially influenced by improper considerations. 230 Ind. at 625.

IC 1971, 22-3-2-8 (Burns Code Ed.) operates to deny compensation under certain enumerated conditions:

> *Willful misconduct—self-inflicted injury—intoxication— and Burden of Proof.—No compensation shall be allowed for any injury or death due to the employee's intentionally self-inflicted injury,* his intoxication, his commission of a felony or misdemeanor, his willful failure or refusal to use a safety appliance, his willful failure or refusal to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous positon in the place of work, or his willful failure or refusal to perform any statutory duty. The burden of proof shall be on the defendant. [Acts 1929, ch. 172, § 8, p. 536] (Emphasis supplied.)

Schenk's Special Answer invoked this statute and prompted the Board's finding

> . . . that Plaintiff's said injury of April 26, 1971 did not arise out of and in the course of his employment with the Defendant herein; that Plaintiff's said injury was intentionally self-inflicted when Plaintiff attempted suicide by causing a Ram Set tool to discharge a projectile into his right temple. . . .

Although we find no Indiana case directly applying the "intentionally self-inflicted" provision of IC 1971, 22-3-2-8,

its meaning is plain and unambiguous,[1] i.e., when the evidence suggests, and the Board finds that an employee intentionally inflicted injury upon himself, compensation must be denied. Such a question is uniquely (although not conclusively)[2] a factual matter for the Board. *See* IC 1971, 22-3-4-8 (Burns Code Ed.).

There was substantial competent evidence of probative value to support the Board's conclusion that Henry's injury was intentionally self-inflicted. He had experienced recent business and financial setbacks causing at least some depression. He was found wounded and unconscious in the bathroom area of Schenk's premises prior to his regular time of work, a Ram Set tool lying by his side and his eyeglasses and cigarettes on a workbench at the opposite end of the building. There was no evidence of foul play or forced entry and expert testimony established the tool was not defective. Henry's height, the location of his injury, the matted hair on the muzzle of the tool and the relative heights of the scratch marks and imbedded nail, all suggest the reasonable conclusion that Henry positioned the tool against the wall, placed his head against it and applied sufficient force to fire the nail through both temples of his head.

Henry properly cloaks himself with the inference (or presumption) that an employee's injury aries out of and in the course of his employment if it occurs under circumstances where he is charged with the performance of a certain duty and is found injured or dead at a place where it would be necessary for him to be in performing that duty. *Compare, U.S. Steel Corp.* v. *CiCilian* (1962), 133 Ind. App. 249, 180 N.E.2d 381; *Taylor* v. *Director Public Works & Supply* (1951), 121 Ind. App. 650, 100 N.E.2d 831;

---

1. *See* IC 1971, 1-1-4-1 (Burns Code Ed.)

2. When the evidence and facts presented at the hearing are uncontradicted and support but *one* reasonable conclusion, the question becomes a matter of law. *DeMichaeli & Associates v. Sanders* (1975), 167 Ind. App. 669, 340 N.E.2d 796 (and cases cited therein).

*School City of Hammond* v. *Moriarty* (1949), 119 Ind. App. 206, 85 N.E.2d 273; *Nat'l-Helfrich, etc. Co.* v. *Collar* (1939), 107 Ind. App. 225, 23 N.E.2d 620; *Czuczko* v. *Golden-Gary Company* (1932), 94 Ind. App. 47, 177 N.E. 466, 179 N.E. 19; *Capital Paper Co.* v. *Conner* (1924), 81 Ind. App. 545, 144 N.E. 474. However, this inference is concededly rebuttable and may be overcome by "substantial evidence that the death [or injury] was not so caused." *See School City of Hammond* v. *Moriarty, supra,* 119 Ind. App. at 214. *See also, Taylor* v. *Director Public Works & Supply, supra; Czuczko* v. *Golden-Gary Company, supra.*

The Board simply found that there was substantial evidence sufficient to overcome the inference which it had a right to do.

Henry's final argument as to the admission over objection of certain evidence is also unavailing. The Board is not a court of law and therefore not subject to the strict rules of evidence. *See, Page* v. *Board of Comm'rs of County of Clay* (1973), 155 Ind. App. 215, 292 N.E.2d 254, *McCoy* v. *General Glass Corp.* (1938), 106 Ind. App. 116, 17 N.E.2d 473; SMALL, *supra* § 12.6, p. 386. The police officers testified as arguably expert witnesses and the Board therefore had the discretion to admit their opinion testimony. No abuse of that discretion has been shown. The other evidence, some cumulative and some hearsay, does not preclude an affirmance if there is some other competent evidence to support the Board's decision. *See, Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399; *Guy* v. *Universal Atlas Cement Co.* (1968), 143 Ind. App. 318, 240 N.E.2d 497; *Holliday* v. *National Malleable & Steel Castings Co.* (1932), 95 Ind. App. 303, 183 N.E. 407. *See also, Lewis* v. *Review Board of Indiana Emp. Sec. Div.* (1972), 152 Ind. App. 187, 282 N.E.2d 876; SMALL, *supra,* § 12.6, pp. 386, 389 (and cases cited therein). There was sufficient other competent evidence presented at the hearing exclusive of the challenged evidence to support the Board's decision in this case.

Finding no reversible error, the Board's Award must be affirmed.

Affirmed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 346 N.E.2d 616.