JACKSON HILL COAL AND COKE COMPANY *v.* SLOVER ET AL.

[No. 15,573. Filed January 27, 1936. Rehearing denied April 24, 1936.]

*Hays & Hays, Alonzo C. Owens, John S. Taylor* and *J. Olias Vanier,* for appellant.

*Stanley Stohr,* for appellees.

WOOD, J.—This is an appeal from an award of compensation, made by the full Industrial Board to the appellees as surviving dependents of one, Ernest C. Slover, deceased.

It appears from the facts that the decedent while employed in the mine of appellant sustained compensable injuries as the result of an accident arising out of and in the course of said employment on November 18, 1931, for which he was awarded and received compensation from November 26, 1931, to and including December 21, 1934, on which date the decedent committed suicide.

Thereafter the appellees filed an application for compensation as dependents of decedent alleging that his death was the result of the injuries sustained in the accident which occurred on November 18, 1931. To this application the appellant filed an answer in three paragraphs. The first was a general denial. The second alleged that decedent's death was not the result of an

injury from accident arising out of and in the course of his employment by the appellant, but was due to decedent's self inflicted injury, in that he committed suicide by shooting himself with a revolver. The third alleged that decedent's death was not the result of an injury from accident arising out of and in the course of his employment by appellant, but was due to an independent intervening agency, to-wit, suicide through voluntary, willful choice, by shooting himself in the head with a revolver.

On the issues thus tendered the full Industrial Board made a finding of facts in these words and figures: "And the full Industrial Board having heard the argument of counsel, having reviewed the evidence and being duly advised therein, now finds that on November 18, 1931, while in the employ of the defendant at an average weekly wage of $30.00, one Ernest Slover suffered an injury as the result of an accident arising out of and in the course of his employment, of which the defendant had knowledge and furnished medical attention; that a compensation agreement was approved by the Industrial Board on January 8, 1932, providing for the payment of compensation at the rate of $16.50 a week during temporary total disability not exceeding the period fixed by law beginning on November 26, 1931; that under the terms of said agreement compensation was paid up to October 3, 1934, and on October 5, 1934, defendant filed its application for the review of an award on account of a change in conditions alleging that the disability of said employee on account of said injury had ended since the date of said award; that a hearing on said application was had before a single member of the Board and on January 16, 1935, the hearing member entered a finding that the said Ernest Slover died and that disability had continued to the day of his death and ordered that compensation from October 3, 1934,

to and including December 21, 1934, should be paid to the dependents of the said Ernest C. Slover at the rate of $16.50 a week up to and including December 21, 1934.

"It is further found that on April 6, 1935, plaintiffs herein filed their application for the adjustment of a claim for compensation, alleging that on December 22, 1934, the said Ernest C. Slover died as the result of the accidental injuries sustained on November 18, 1931.

"It is further found by the full Industrial Board that the accidental injuries sustained by said Ernest Slover were burns to the head and the upper part of the body which were disfiguring in character.

"It is further found that the said Ernest Slover committed suicide on the morning of December 22, 1934.

"It is further found that at the time of the said Ernest Slover's death he was suffering from temporary mental abberation.

"It is further found by the full Industrial Board that the death of the said Ernest Slover was due to the accidental injury sustained on November 18, 1931.

"It is further found that at the time of his death the said Ernest Slover was living with Verna Slover, his wife, Walter Slover, a son, Euleta Slover, a daughter, and Maxine Slover, a daughter, all of whom were totally dependent upon him for support.

"It is further found that under the agreement approved by the Industrial Board of Indiana on January 8, 1932, defendant has paid 160⅓ weeks' compensation to the said Ernest Slover."

On the finding of facts the Board predicated an award as follows: "It is therefore considered and ordered by the full Industrial Board of Indiana that there is awarded plaintiffs Verna Slover, Walter Slover, Euleta Slover, and Maxine Slover, as against defendant, compensation at the rate of $16.50 a week in equal shares, beginning with November 18, 1931, during their period

of dependency but not exceeding three hundred weeks as to time.

"It is further ordered that the defendant shall be given credit herein for 160⅓ weeks' compensation heretofore paid to Ernest Slover during the period of his disability.

"It is further ordered that the compensation due and payable to Walter, Euleta and Maxine Slover shall be paid to their mother Verna Slover for their maintenance and support without her appointment as guardian or trustee.

"It is further ordered that the defendant shall pay the statutory one hundred dollars burial expense.

"It is further ordered that the defendant pay the cost of this proceeding."

The error properly assigned by the appellant and requiring our attention is, that the award of the full Industrial Board is contrary to law.

It is the appellant's contention, that the evidence is of such a conclusive character as to preclude any conclusion, other than that the decedent was possessed of sufficient mental capacity as to enable him to voluntarily and deliberately choose to commit suicide, and that therefore his death was not the result of the injuries sustained in the accident of November 18, 1931, but was the result of an independent intervening cause.

On an appeal from an award of the full Industrial Board, this court will look only to the evidence most favorable to the finding of facts on which the award is based, for the purpose of determining the sufficiency of the evidence to sustain the award. This court will not weigh the evidence on appeal from such an award, and it is bound by the finding of facts made by the Board in cases where the evidence is conflicting. The Industrial Board has the power to determine the ultimate facts in the case and if in doing this

it reaches a legitimate conclusion upon the evidential facts, this court must not disturb that conclusion, though it might prefer another conclusion equally legitimate. In order to arrive at a contrary conclusion, we cannot weigh the evidence, neither can we ignore any reasonable inferences which the Industrial Board may have drawn from the facts which the evidence tends to establish. *Rasin* v. *Miami Coal Co.* (1922), 79 Ind. App. 123, 137 N. E. 529; *Buhner* v. *Bowman* (1923), 81 Ind. App. 395, 143 N. E. 366; *Swing* v. *Kokomo, etc., Co.* (1920), 75 Ind. App. 124, 125 N. E. 471; *In re Stewart* (1919), 72 Ind. App. 463, 126 N. E. 42; *Radonovic* v. *Vermillion, etc., Co.* (1925), 83 Ind. App. 555, 149 N. E. 182; *Lazarus* v. *Scherer* (1931), 92 Ind. App. 90, 174 N. E. 293; *Norris* v. *Daniels, etc., Co.* (1932), 95 Ind. App. 125, 182 N. E. 585; *Lester et al.* v. *Ice Hardware Co.* (1934), 98 Ind. App. 371, 189 N. E. 394; *Kingan and Co.* v. *Ossan* (1921), 75 Ind. App. 548, 121 N. E. 289.

The facts presented by the record before us make this a case of first impression in this state. We are compelled to seek precedents in other states. One of the leading compensation cases in this country setting forth the rules which should govern the right to compensation where the injured employee has committed suicide allegedly as the result of the injury is *Sponatski's Case* (1915), 220 Mass. 526, 530, 108 N. E. 466, where the court said in stating the rule: "It is that where there follows as the direct result of a physical injury an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy 'without conscious volition to produce death, having knowledge of the physical consequences of the act,' then there is a direct and unbroken causal connection between the physical injury and the death. But where the resulting insanity is such as to cause suicide through a voluntary willful choice deter-

mined by a moderately intelligent mental power which knows the purpose and the physical effect of the suicidal act even though choice is dominated and ruled by a disordered mind, then there is a new and independent agency which breaks the chain of causation arising from the injury."

The English cases, seemingly do not as a condition of awarding compensation, insist that the injured employee shall not have been conscious of the consequences of his act of self destruction, if that act was the result of a disordered mind proximately resulting from the injury. *Graham* v. *Christie, etc., Co.* (1916), 10 B. W. C. C. 486.

This court has held that a claimant is entitled to compensation for a mental or nervous condition resulting from a physical injury, in the case of *Kingan* v. *Ossan, supra,* the court said (p. 557) : "The fact that appellee was suffering from a mental or nervous condition resulting from a physical injury, rather than from the physical injury itself, cannot have the effect of relieving appellant from liability. This court is committed to the doctrine that a 'personal injury,' as that term is used in the Workmen's Compensation Act, *supra,* has reference not merely to some break in some part of the body, or some wound thereon or the like, but also to the consequence or disability that results therefrom. *In re McCaskey* (1917), 65 Ind. App. 349, 117 N. E. 268; *Indian Creek, etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519. It is apparent that certain mental and nervous conditions may be as effective in producing disability as a physical wound or the loss of a member. Such conditions, therefore, afford a basis for compensation. *In re Hunnewell* (1915), 220 Mass. 351, 107 N. E. 934; 1 Honnold, Workmen's Compensation, 293; *Eaves* v. *Blaenclydach, etc., Co.* (1909), 2 B. W. C. C. 329; *Yates* v. *South Kirby, etc., Collieries* (1910), 3 B.

W. C. C. 418; *Morris* v. *Turford and Southward* (1913), 6 B. W. C. C. 606. It may be conceded as appellant contends that a mental attitude toward an original injury, voluntarily assumed, cannot be said to be a result of such injury; that intentional and willful practices, and the use of mental processes, by which mental and physical infirmities are developed into injurious conditions, will defeat a claim for compensation, as under such circumstances the injured employee becomes the responsible agent for his own condition. However, under the evidence in this case, the most that can be said in appellant's favor in that regard is, that the evidence is conflicting. Under such circumstances we cannot weigh the evidence and determine where the preponderance lies, but must accept the finding of the Industrial Board as conclusive of such fact."

In addition to the cases above cited in which compensation was awarded to dependents of employees who committed suicide as a result of physical injuries, see *Lupfer* v. *Baldwin, etc.* (1921), 269 Pa. 275, 112 Atl. 458, where the court after having reviewed the facts disclosed by the record, concluded its opinion affirming an award of compensation in these words (p. 277): "Although not couched in these precise words, the various statements of the referee, when read together, are tantamount to a finding that deceased killed himself while possessed by an uncontrollable insane impulse, or while in a delirium, or frenzy, without rational knowledge of the physical consequences of his act. This, with the other findings, already indicated, is sufficient to sustain the award; for we agree with the court below that 'it is possible to point out evidence (not perhaps the strongest or most persuasive, but still tangible evidence) to support every finding of the referee, approved by the board.'" *Malone* v. *Cayzer, etc.* (1908), 1 B. W.

C. C. 351; *Jenkins* v. *Lancaster, etc.* (1923), 16 B. W. C. C. 43.

In the case of *Wilder* v. *Russell, etc., Co.* (1927), 107 Conn. 56, 139 Atl. 644, 56 A. L. R. 455, the court held that the suicide of one rendered insane by overwork in his employment might arise out of, and in the course of, his employment, within the operation of the Workmen's Compensation Act of that state. Appended to this case in 56 A. L. R. 455 is an interesting and illuminating note on this subject.

In the cases of *Tetrault's Case* (1932), 278 Mass. 447, 180 N. E. 231; *Industrial Commission* v. *Boubaker* (1935), 129 Ohio St. 617, 196 N. E. 409; *McKane* v. *Capitol, etc., Company* (1926), 100 Vt. 45, 134 Atl. 640, compensation was denied in suicide cases.

It cannot be successfully maintained that the cases are in conflict, for in the final analysis the result attained in each case is dependent upon the facts and circumstances presented in that particular case. We cannot apply the cases in which compensation was denied, to this case as appellant would have us do, because some of the facts in those cases were somewhat similar to the present case. "That is altogether a fallacy, because one case does not apply to another when the facts are even slightly different."

November 18, 1931, the decedent received severe burns about his face, ears, back of the neck, back, and breast, and both arms were burned to the finger tips. He was completely disfigured and did not look like himself. From that date until his death he was under a physician's care and required to take treatment. He could not go to bed and get rest like other people; it would be twelve, one, or two o'clock at night before he would get rest; was easily excited; would become angry at his wife and children, sometimes striking them; threatened to harm members of his family

and himself; had sullen angry spells, when he could not be controlled; on such occasions his mental condition was such that he could not be talked to or reasoned with; he would have lucid spells when he would go to the doctor's office; then he would have attacks when he would be out of his mind; he would not be normal; was morose all the time during these attacks; would often cry; seemed to be mentally incompetent; was slow to understand, was extremely excitable; his voice would tremble as he talked.

One physician who had been decedent's family doctor for twenty years treated him after his injury and was familiar with all the facts above summarized, while testifying as a witness for appellees, stated that in his opinion when the decedent shot himself he was of unsound mind and was incapable of determining whether he was or was not destroying himself and that this condition was the result of his injury.

Another physician who had known the decedent for some time, and treated him occasionally after his injury, had opportunities to observe him and was familiar with the facts as above outlined, while testifying as a witness for the appellees gave it as his opinion that the decedent did not know whether he was right or wrong; that the shock and poison from the injury had unbalanced his central nervous system.

In *Sponatski's Case, supra,* the facts were not as favorable to the claimants as in the instant case. In affirming an award of compensation in that case the court said (p. 529) : "The finding in this respect, although hanging on a rather slender thread of evidence, is therefore not unsupported. Therefore it must stand."

If we give heed to the rules of law by which this court is controlled on appeal from an award of the Industrial Board, we must hold that the evidence is sufficient to sustain the finding of facts, and that they

are sufficient to sustain the award. To hold otherwise would require us to ignore those rules of law and that we must not do.

The award is affirmed with the statutory penalty of five per cent.