**INDIANA STATE POLICE, Appellant,**

v.

**James WIESSING (Deceased), Appellee.**

**No. 93A02–0412–EX–1010.**

Court of Appeals of Indiana.

Nov. 10, 2005.

---

Robert J. Doyle, Lisa M. Dillon, Due Doyle Fanning & Metzger, LLP, Indianapolis, IN, Attorneys for Appellant.

Nathan B. Maudlin, Randal M. Klezmer & Associates, Indianapolis, IN, Attorney for Appellee.

**OPINION**

MAY, Judge.

The Indiana State Police ("the Police") appeal a decision of the Full Worker's Compensation Board ("the Board") awarding benefits to the descendants of James Wiessing ("the Descendants"). The Police raise three issues, which we consolidate and restate as:

1. Whether the Board erred when it found Wiessing's suicide by gunshot wound to the head was compensable in light of Ind.Code § 22–3–2–8; and

2. Whether the Descendants' application for adjustment of claim was timely filed.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Wiessing was a trooper with the Indiana State Police. During a routine traffic stop on April 16, 1994, a motorist attempted to take Wiessing's gun. A struggle ensued, and Wiessing shot and killed the motorist.

On October 10, 2000, Wiessing died from a self-inflicted gunshot wound to the head. Wiessing had two sons, who lived in Missouri with their mother, Wiessing's ex-wife. On May 23, 2001, the Descendants filed an application for adjustment of claim with the Board, requesting death and burial benefits for Wiessing. The Police asserted as an affirmative defense that Wiessing's injury was knowingly self-inflicted.

A single member of the Board first heard the case. After the hearing, the Single Hearing Member denied the Descendants' claim in an order that provided:

*CONCLUSIONS OF LAW*

1. Although Plaintiff's decedent, Indiana State Police Trooper James A. Wiessing, appears to have sustained personal injury by accident arising out of and in the course of his employment with Defendant, the injury so sustained was that of post-traumatic stress disorder, diagnosed June 15, 1995.

2. The May 23, 2001 Application for Adjustment of Claim was not timely filed, thereby depriving the Board of jurisdiction over said accidental injury.

3. Even were the Board to have jurisdiction over this matter, the Single Hearing Member finds that Trooper Wiessing's October 10, 2000 suicide was not a proximate result of the April 16, 1994 incident.

4. Although the Board does not need to reach the issue of whether the claim would be barred because the final injury was knowingly self-inflicted, the Single Hearing Member finds that this would not defeat the present claim were it compensable.

5. The Single Hearing Member finds that were this claim to have been deemed compensable, the receipt of the State Police pension death benefits would not serve as a bar to recovery under the Worker's Compensation Act. Instead, said pension death benefit payments would constitute a credit in favor of Defendant.

(Appellant's App. at 279.)

The Descendants appealed to the Board. The Board reviewed the evidence, heard argument from the parties, and then entered an order that provided in pertinent part:

It is further found that the Full Worker's Compensation Board by a majority of its members reverses the Single Hearing Member's decision and replaces it with the following Findings of Fact, Conclusions of Law, and Award:

### FINDINGS OF FACT

1. On April 16, 1994 James A. Wiessing was performing his duties as a State Police trooper when he encountered an individual driving erratically. Trooper Wiessing turned his vehicle around to pursue the individual and did so at a high rate of speed. During the traffic stop that followed, a struggle ensued during which the detainee gained control of Trooper Wiessing's gun. After Trooper Wiessing regained control of the gun he perceived that the struggling detainee was lunging for his weapon and he shot the man in the mouth killing him instantly.

2. Evidence was presented at hearing that the foregoing event precipitated a dramatic change in Trooper Wiessing's personality. In fact, on June 15, 1995, John F. Ireland, Ph.D., diagnosed Trooper Wiessing as suffering from chronic post-traumatic stress disorder. Dr. Ireland would later report that the PTSD symptoms and depression occurred in response to the April 16, 1994 event through a perceived risk of dying as well as the shooting and killing of the detainee.

3. During 1996 Trooper Wiessing initiated divorce proceedings from his wife of nearly thirteen (13) years following an extramarital affair he had with a nineteen (19) year old woman.

4. In 1997 Trooper Wiessing appears to have come close to committing suicide. He phoned his ex-wife, telling her to tell his sons that he loved them and ended the conversation. After Trooper Wiessing's ex-wife notified his supervisors of the potential problem, Trooper Wiessing was ultimately located on a rural road with his gun unholstered and wish [sic] a disheveled appearance. His responding colleagues were able to sufficiently diffuse [sic] the apparent situation to the point they felt they could return him to his home that evening.

5. In 1998, Trooper Wiessing's ex-wife remarried and moved to Missouri, taking their two sons with her. Up until that time, Trooper Wiessing had been seeing his sons on a daily basis. Thereafter, however, he was only able to see them infrequently due to the distance and, in the beginning, the unavailability of a vehicle other than his duty vehicle.

6. During 1999 and the early part of 2000, Trooper Wiessing was assigned to duty on a casino riverboat. This was not voluntary service for Trooper Wiessing; instead, he received the assignment through use of a lottery system. While working at the casino, Trooper Wiessing appears to have met Tina O'Neil. Although Mrs. O'Neil was married, she and Trooper Wiessing began having an affair.

7. The evidence established that his behavior, that of extramarital affairs, is completely at odds with his prior behavior as a husband and father. Dr. Hale appropriately associates this as maladjustment consistent with the PTSD symptomatology.

8. In May or June of 2000 Trooper Wiessing transferred back from the casino riverboat duty to road patrol.

Since he had recently purchased a home in Evansville, his road patrol duty was going to be transferred from Posey County to Vanderburgh County.

9. The testimony of Gregg R. Wagner, a sergeant with the Indiana State Police Post where Trooper Wiessing was stationed, revealed that the final two to three weeks of Trooper Wiessing's life visited a great deal of stress on Trooper Wiessing. Sgt. Wagner testified that when he became aware that Trooper Wiessing had called in sick on September 20, had two days off, then called in sick again on September 23, he felt he needed to go to his home to check on him. At that time, Trooper Wiessing reported being emotionally sick rather than physically sick.

10. As a result of the maladjustment behavior, Trooper Wiessing had problems develop in his personal relationships. These problems resulted in a series of events, including restraining orders and protective orders, all of which caused him great upset. Again, Dr. Hale attributes these to the maladjustment from the PTSD symptomatology.

11. Trooper Wiessing was very embarrassed by the course of events and that his colleagues at the Post knew about the situation. He took some time off during the week, returning on October 5.

12. Sgt. Wagner met with Mrs. O'Neil on October 8th at the casino riverboat where she worked. He interviewed her there as part of the ongoing inquiry into her allegations.

13. On his way from meeting with Mrs. O'Neil, Sgt. Wagner received a call from Trooper Wiessing, who was apparently aware of Sgt. Wagner's meeting with her. Sgt. Wagner and Trooper Wiessing met at a location down the road from the State Police Post to talk. Trooper Wiessing expressed great concern and that he feared his job was in jeopardy.

14. Plaintiff has established, particularly through the testimony of Mrs. Lohmann and Trooper Wiessing's younger brother, Tom, as well as the August 10, 2003 report of Gregory T. Hale, Ph.D., that the chain of events leading to Trooper Wiessing's death was set in motion by the April 16, 1994 shooting death of the traffic stop detainee.

15. Plaintiff presented evidence that Trooper Wiessing was unwilling to reveal the presence of a continuing problem related to the traffic stop shooting, particularly through the testimony of Mrs. Lohmann. It is indeed likely he would in fact withhold from his superiors any ongoing PTSD symptoms and problems.

16. Trooper Wiessing's presumptive dependents received death benefits through the Indiana State Police pension program, representing pension contributions, interest thereon, Trooper Wiessing's vested interest in the plan, minus the unpaid balance of a pension loan. Defendant contends the acceptance of those benefits constitutes an election of remedies to the exclusion of worker's compensation benefits.

17. Plaintiff's presumptive dependents are Brett David Wiessing and Ryan James Wiessing.

*CONCLUSIONS OF LAW*

1. Plaintiff's decedent, Indiana State Police Trooper James A. Wiessing, sustained personal injury by acci-

dent arising out of and in the course of his employment with Defendant, the injury so sustained was that of post-traumatic stress disorder, diagnosed June 15, 1995. Because Trooper Wiessing's suicide resulted from this condition, it is not considered to be a self-inflicted injury under Indiana Code 22–3–2–8.

2. The May 23, 2001 Application for Adjustment of Claim was timely filed.

3. The receipt of death benefit payments under Indiana Code 10–12–2–5(c) are [sic] non-exclusive, do not bar this claim, and may be taken as a credit against those benefits awarded hereby.

### AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Worker's Compensation Board of Indiana that there be AWARDED Plaintiff's presumptive dependents as against Defendant compensation benefits for Plaintiff's temporary total disability benefits as a result of his said accidental injury and death at the temporary total disability rate of Four Hundred Twenty–Eight Dollars ($428.00) per week, beginning October 10, 2000, in accordance with Indiana Code 22–3–3–17.

IT IS FURTHER ORDERED that Defendant pay burial expenses in the amount of Six Thousand Dollars ($6,000.00), in accordance with Indiana Code 22–3–3–21, to Plaintiff's presumptive dependents.

(*Id.* at 6–10.)

### DISCUSSION AND DECISION

 The Police appeal the decision of the Board. In such an appeal, we are bound by the Board's findings of fact, and we may not disturb its determination unless the evidence is undisputed and leads undeniably to a contrary conclusion. *Pillsbury Co. v. Osborne*, 794 N.E.2d 474, 479 (Ind.Ct.App.2003), *trans. denied* 812 N.E.2d 790 (Ind.2004). We may not assess the credibility of the witnesses or reweigh the evidence. *Id.* In addition, we are confined to considering only the evidence favorable to the decision and any favorable inferences therefrom. *Id.*

 Our review involves two steps. First, we review the record to determine if there is any competent evidence of probative value to support the findings. *Id.* Then, we review the findings to determine whether they support the award. *Id.* "The finding of the ultimate fact becomes a question of law for the determination of the reviewing court only where there can be but one reasonable inference drawn from the evidentiary facts established by the uncontradicted evidence." *K–Mart Corp. v. Morrison*, 609 N.E.2d 17, 28 (Ind. Ct.App.1993), *trans. denied.*

### 1. *Self-inflicted injury*

 The Police assert the Board erred by allowing recovery, as suicide is a knowingly self-inflicted injury for which recovery is prohibited by Ind.Code § 22–3–2–8. Before addressing that claim, we address a procedural argument raised by the Descendants. They claim the Police waived any argument based on that statute by failing to assert the issue in its brief before the Board.

The Police brief to the Board stated:

There were four disputed issues addressed at the hearing [before the Single Hearing Member]. The Plaintiff has only appealed The Single Hearing Member's Conclusions of Law numbers two and three. Therefore, these are the only two issues that will be addressed in this brief.

(Appellant's App. at 296.) The two conclusions of the Single Hearing Member challenged by the Descendants, and thus addressed by the Police, were:

2. The May 23, 2001 Application for Adjustment of Claim was not timely filed, thereby depriving the Board of jurisdiction over said accidental injury.

3. Even were the Board to have jurisdiction over this matter, the Single Hearing Member finds that Trooper Wiessing's October 10, 2000 suicide was not a proximate result of the April 16, 1994 incident.

(*Id.* at 274.) Accordingly, the Police's brief to the Board did not specifically challenge the Single Hearing Member's conclusion four, which provided Ind.Code § 22–3–2–8 "would not defeat the present claim." (*Id.*)

Nevertheless, the Descendants' brief to the Board alleged:

Normally, death by suicide would not be compensable under the Act. However, here, the shooting incident in 1994 traumatized [Wiessing] to such an extent that his life became a shambles, and in an act of desperation, he took his own life. As such, the shooting incident is the proximate cause of [Wiessing's] death.

(*Id.* at 289.) The Descendants then proceeded to discuss at length whether Wiessing's death was compensable pursuant to *Jackson Hill Coal and Coke Co. v. Slover*, 102 Ind.App. 145, 199 N.E. 417 (1936). That decision addressed whether a worker who committed suicide after an accident at work could obtain Worker's Compensation benefits when a Worker's Compensation statute provided "no compensation shall be allowed for an injury or death due to the employee's intentionally self-inflicted injury." (Appellant's App. at 289) (quoting Indiana Acts 1929, ch. 172, § 8). Based on the parties' arguments, the Board concluded:

1. Plaintiff's decedent, Indiana State Police Trooper James A. Wiessing, sustained personal injury by accident arising out of and in the course of his employment with Defendant, the injury so sustained was that of post-traumatic stress disorder, diagnosed June 15, 1995. Because Trooper Wiessing's suicide resulted from this condition, it is not considered to be a self-inflicted injury under Indiana Code 22–3–2–8.

(*Id.* at 10.)

Contrary to the Descendants' allegation, whether Wiessing's self-inflicted injury was compensable under Ind.Code § 22–3–2–8 was before the Board. While the Descendants did not cite the current version of the statute, they quoted a prior version that contained the same language. In addition, they argued at length Wiessing's death was compensable because it was proximately caused by the earlier work injury, such that it was not a knowingly self-inflicted injury. Accordingly, the issue was before the Board. *See, e.g., Paint Shuttle, Ind. v. Continental Cas. Co.*, 733 N.E.2d 513, 525 (Ind.Ct.App.2000) (while defendant failed to properly raise affirmative defense in its responsive pleading, the defense was tried by "the implied consent of the parties" where other pleadings and arguments before court addressed the issue), *trans. denied* 753 N.E.2d 5 (Ind. 2001). Therefore, the issue was not waived for appeal.

■ The Worker's Compensation Act limits recovery of benefits for some types of behavior by the employee:

No compensation is allowed for an injury or death due to the employee's knowingly self-inflicted injury, his intoxication, his commission of an offense, his

knowing failure to use a safety appliance, his knowing failure to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work, or his knowing failure to perform any statutory duty. The burden of proof is on the defendant.

Ind.Code § 22–3–2–8.

The coroner found Wiessing died from "cerebral disruption" caused by a "gunshot wound to the head." (App. at 260.) The death certificate indicates the "manner of death" was "suicide," not an "accident" or a "homicide." (*Id.*) The application of the statute to those facts could not appear more plain: Wiessing died from a "knowingly self-inflicted injury" and accordingly, "[n]o compensation is allowed." *See* Ind. Code § 22–3–2–8.

Nevertheless, the Board concluded his death was compensable because the suicide was proximately caused by post-traumatic stress disorder related to the April 16, 1994 incident in which Wiessing shot and killed a motorist who attempted to take Wiessing's gun. In the words of the Board, "[b]ecause Trooper Wiessing's suicide resulted from this condition, it is not considered to be a self-inflicted injury under Indiana Code 22–3–2–8." (App. at 10.)

■ The Police claim the Board's decision is "contrary to law." (Appellant's Br. at 12, 13.) Whether an employee's injury was self-inflicted "is uniquely (although not conclusively) a factual matter for the Board." *Henry v. Schenk Mechanical Contractors, Inc.,* 169 Ind.App. 178, 186, 346 N.E.2d 616, 622 (1976). The decision is a matter of law only "[w]hen the evidence and facts presented at the hearing are uncontradicted and support but one reasonable conclusion." *Id.* at 186 n. 2, 346 N.E.2d at 622 n. 2. In other words, if "a rather slender thread of evidence" supports the Board's decision, *Jackson*

*Hill,* 102 Ind.App. at 154, 199 N.E. at 420, we must affirm because the Board "has the power to determine the ultimate facts in the case." *Id.* at 149–50, 199 N.E. at 419.

■ The Police note the Board referenced the "chain of causation" test when determining whether Wiessing's death was a result of the 1994 shooting incident. We discussed that test in *Yarbrough v. Polar Ice & Fuel Co.,* 118 Ind.App. 321, 324–325, 79 N.E.2d 422, 423–424 (1948):

It seems to be well settled that a subsequent incident or accident which results in a new, different or additional injury is compensable if it is of such nature and occurs under such circumstances that it can be considered as the proximate and natural result of the original injury. [numerous citations omitted.] Although not concerned with a second or subsequent accident this court said in *United Paperboard Co. v. Lewis,* 1917, 65 Ind.App. 356, 117 N.E. 276, 278: 'It is well settled that where the primary injury arises out of the employment, every consequence which flows from it likewise arises out of the employment.' The same principle is announced in *Goshen Veneer Co. v. Cozzi,* 1931, 93 Ind.App. 160, 176 N.E. 634, and cases cited.

On the other hand the subsequent incident or accident may be such as to constitute an independent intervening agency which breaks the chain of causation between the two injuries and relieves the employer of responsibility for the latter. *Dinoni v. Vulcan Coal Co.,* 1931, 132 Kan. 810, 297 P. 721; *Kolyer v. Westmoreland Coal Co.,* 1942, 149 Pa.[Super.] 473, 27 A.2d 272. And this is true even though the first injury may have contributed to the second accident to some extent. *Roberts v. Broughton, etc., Colliery Co., Ltd.* 1921, 14 B.W.C.C.

186. As was said in Marshall v. City of Pittsburgh, *supra*, 'Cases may arise where the elements of time and space and intervening causes may be so involved that the second injury could not be said to be the proximate, natural, and probable result of the original accident, or the second accident may so predominate that it overshadows the original cause.' Lack of ordinary care on the part of the claimant which proximately results in the second accident has been held to constitute an independent intervening agency which breaks the chain of causation between the two injuries and thus bars recovery for the second. *Head Drilling Co. v. Industrial Acc. Comm.,* 1918, 177 Cal. 194, 170 P. 157. *See also* 71 C.J. Workmen's Compensation Acts, § 368.

While agreeing that chain of causation test is appropriate, the Police disagree with the Board's decision that Wiessing's suicide was proximately caused by the April 16, 1994 shooting incident. As we discussed above, our review of the Board's decision is limited:

> Whether the second accident, in the case before us, was the proximate and natural result of the original injury or whether it was the proximate result of the appellant's negligence and therefore should be regarded as an independent intervening cause, was a question of fact for the Industrial Board, to be decided in view of all the circumstances, and its findings in that regard must be sustained, even though the evidence is undisputed, if there is any legitimate theory applicable to the facts on which the award can be upheld.

*Id.* at 325, 79 N.E.2d at 424.

 Wiessing's brother and ex-wife testified regarding the changes that occurred in Wiessing's personality after the shooting incident. His ex-wife claimed he was a completely different person after the shooting and if the shooting had not occurred their marriage would not have ended. In 1995, Wiessing was diagnosed with and treated for PTSD resulting from the shooting incident. After reviewing doctor reports and testimony by Wiessing's relatives, Dr. Hale concluded:

> The April 1994 events seem to have had a significant impact on Mr. Wiessing's psychological adjustment. Although he admitted to a family history of depressive illness in the course of his medical treatment, the psychological evaluation and treatment provided by Dr. Ireland following the event indicates Mr. Wiessing displayed a variety of psychological symptoms. These symptoms were reportedly associated with post-traumatic stress disorder (PTSD) as well as depressive illness. Although he was treated by Dr. Lee, primary care physician, using a number of psychotropic medications designed to control his psychological symptoms, Mr. Wiessing's condition appeared to be problematic. Many of these symptoms were associated with his reported feelings of guilt and personal responsibility he took for the death of the individual in April 1994. Behavior changes were described by his wife in her September 2002 deposition. These changes are consistent with those previously identified by Dr. Ireland during the course of his treatment with Mr. Wiessing in June 1995....
>
> Thus, based on the available information and the records reviewed, Mr. Wiessing's suicide appears to be the culmination of his inability to deal with the psychological consequences of his involvement in 1994 police action shooting as well as his inability to manage the stress and adjustment issues associated with continuing his career as a law en-

forcement officer following the April 1994 events.

(App. at 36.)[1] Because evidence in the record supports the Board's factual determination, we affirm. *See, e.g., Jackson Hill,* 102 Ind.App. at 154–55, 199 N.E. at 421 ("If we give heed to the rules of law by which this court is controlled on appeal from an award of the Industrial Board, we must hold that the evidence is sufficient to sustain the finding of facts, and that they are sufficient to sustain the award.").

### 2. *Timeliness of filing*

■ The Police also claim the Board erred because the Descendants' claim was untimely. The Worker's Compensation Act contains the following limitation on actions:

> The right to compensation under IC 22–3–2 through IC 22–3–6 shall be forever barred unless within two (2) years after the occurrence of the accident, or if death results therefrom, within two (2) years after such death, a claim for compensation thereunder shall be filed with the worker's compensation board.

Ind.Code § 22–3–3–3.[2]

■ That statute should not be seen "merely as a statute of limitations." *Railway Exp. Agency v. Harrington,* 119 Ind.App. 593, 596, 88 N.E.2d 175, 176 (1949), *reh'g denied* 119 Ind.App. 593, 88 N.E.2d 915 (1949). Rather, it creates "a condition attached to the right to recover" or "a condition precedent to the right to maintain the action." *Id.* We construe the limitation "in the nature of a contract

between the employee and the employer." *Hibler v. Globe Am. Corp.,* 128 Ind.App. 156, 165, 147 N.E.2d 19, 24 (1958). The claimant has the burden of proving he filed within the statutory period. *Harrington,* 119 Ind.App. at 596, 88 N.E.2d at 176.

The limitation provided by the statute "is considered to run from the occurrence." *Union City Body Co., Inc. v. Lambdin,* 569 N.E.2d 373, 374 (Ind.Ct.App.1991). Accordingly, the Police argue, Wiessing should have filed a claim "within two (2) years after the occurrence of the accident." Ind.Code § 22–3–3–3. Because the alleged accident occurred on April 16, 1994, when Wiessing killed a motorist who attempted to obtain Wiessing's gun, the Police claim his statutory filing period ended in 1996. Because his Descendants filed on May 23, 2001, the Police assert their claim based on post-traumatic stress disorder related to the shooting incident was five years late.

However, the Police ignore the portions of the statute discussing the limitation "if death results therefrom." Ind.Code § 22–3–3–3. If death results from the work accident, the claim must be filed "within two (2) years after such death." *Id.* The Descendants alleged Wiessing's death was a result of the accident at work, and the Board ultimately found his death was proximately caused by the PTSD caused by the shooting that occurred while he was working as a trooper. Because the Board made that finding, which we may not disturb on appeal, his Descendants had two

---

1. The Police assert Dr. Hale's opinion "lacks probative value" because "Dr. Hale was never presented with the most important documentary evidence in this claim." (Appellant's Br. at 16.) Because the parties stipulated to the admission of Dr. Hale's medical report, (*see* Appellant's App. at 231), the Police may not challenge its admission on appeal. The Police's remaining arguments go to the weight and credibility to be assigned to Dr. Hale's report, issues we may not address on appeal.

2. The statute contains a second sentence regarding accidents or deaths resulting from "exposure to radiation." Ind.Code § 22–3–3–3. However, as no such facts are alleged herein, we need not deal with the limitation provided thereby.

years from the date of his death to file their claim.[3] Wiessing committed suicide on October 10, 2000, such that the Descendants' application for adjustment was timely filed on May 23, 2001.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.

---

3. We explicitly recognize the anomaly created by this statute. Because the limitation is based on the date of the event or accident, and not on the manifestation of an injury, Wiessing could not have recovered if he had attempted on May 23, 2001, to obtain benefits for his PTSD or for an injury caused by his PTSD. *See Ingram v. Land–Air Transp. Co.,* 537 N.E.2d 532, 533 (Ind.Ct.App.1989) (because statutory language "requires a claim to be filed within two years of the occurrence of the accident, without regard to when the injury became manifest," we affirmed the Board's decision an application was untimely where a shoulder injury manifested itself over two years after the accident occurred), *trans. denied.* However, because Wiessing killed himself, and the Board found his death resulted from the event in 1994, the statute opened a new window for filing a claim. If the legislature did not intend to create this anomaly, we trust it will amend the statute.