Boyd **VANDENBERG, Deceased,**
**Appellant–Plaintiff,**

v.

**SNEDEGAR CONSTRUCTION,**
**INC., Appellee–Defendant.**

**No. 93A02–0904–EX–312.**

Court of Appeals of Indiana.

Aug. 21, 2009.

E. Paige Freitag, Bauer & Densford, William C. Lloyd, Lloyd Law Office, Bloomington, IN, Attorneys for Appellant.

Kristen K. Rollison, Due Doyle Fanning & Metzger, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Boyd Vandenberg's wife, Jane Vandenberg, appeals the order of the Full Worker's Compensation Board ("the Board"), affirming the single hearing officer's decision denying her claim for worker's compensation benefits following Boyd's suicide. Jane asserts that the Board erroneously concluded that Snedegar Construction, Inc. ("the Company"), carried its burden to prove that Boyd's death was caused by a knowingly self-inflicted injury and therefore she is not entitled to benefits. We affirm.

### Facts and Procedural History

On December 23, 2005, following a Company party and on the Company's premises, Boyd crashed his Company-owned truck into the Company-owned truck that he formerly drove. Shortly thereafter, while still on the Company's premises and in the presence of Company president Gary Snedegar, Boyd took a handgun from the console of the truck and tragically committed suicide.

On March 27, 2006, Jane filed an application for adjustment of claim against the Company. Following a hearing, on April 21, 2008, the single hearing member issued its decision, denying Jane's application. The decision provided in relevant part:

*FINDINGS OF FACT*

1. [Boyd] was an employee of [the Company] for approximately seventeen (17) years prior to his death.

2. [Boyd's] job duties for [the Company] consisted of supervising the corporation's electrical crews. He was considered on-call 24 hours a day, 7 days a week and was provided a company truck.

3. On December 23, 2005, [the Company] gave all employees a half-day and invited each employee to a company get-together where bonus checks and hams were being given out. The get-together was not mandatory and not all employees attended.

4. [The Company] did not provide alcoholic beverages at this get-together, but it did not prevent or discourage employees from bringing their own beverages.

5. Gary Snedegar, the President and primary owner of [the Company], testified that he would not have let anyone drive home if they had too much to drink. However, he was not closely monitoring the consumption of those who were drinking.

6. [Boyd] was reported to be drinking Whiskey that night and after his death a toxicology report showed that his BAC was .2+. It should be noted that this finding is taken in the context of the evidence that [Boyd] drank on a regular basis and even made his own homemade wine.

7. After the party was winding up, Snedegar and [Boyd], counseled a younger employee, Shelby Miles, regarding his recent job performance. [Boyd] commented to Miles that [the Company] was "the place to work" and that Miles needed to give 100% to his job. During or shortly after this conversation, Snedegar came to the conclusion that [Boyd] should not drive home. He expressed to [Boyd] that he was calling his wife to drive [Boyd] home.

8. Snedegar did not plan to drive home himself that night because he had been drinking. He admitted to having two mixed drinks during the course of the evening. He testified that he was not intoxicated.

9. [Boyd] ignored Snedegar's directive not to drive and attempted to leave while Snedegar was distracted with another task.

10. In his attempt to leave, [Boyd] caused a minor wreck involving two company trucks. [Boyd] did not appear to be physically injured in the accident.

11. [Boyd] was reported as being visibly upset when assessing the damage to the trucks and made comments such as: "I don't have anything", "I have worked all of my life and I have nothing", "I have lost it all", "The guys are never going to let me live this down", "I wanted my life to be perfect, I have nothing, I have ruined everything."

12. Snedegar attempted to comfort [Boyd], and mentioned that [Boyd] had previously damaged a backhoe and had also been in a previous accident in a company truck and that everything was fine in those situations.

13. [Boyd's] wife, Jane Vandenberg, testified that [Boyd] felt that he had been teased at work for these previous accidents. However, Snedegar and other employees for [the Company] claimed that [Boyd] was not teased at work anymore [sic] than others and that [Boyd] was often involved in the "ribbing."

14. At some point during this conversation, [Boyd] reached into the center console of his truck, took out a gun, and tragically committed suicide. Snedegar testified that although [Boyd] had been drinking, his belief was that [Boyd] was not too drunk to understand the nature of his actions.

15. [Boyd] was considered by co-workers and family to be a "perfectionist". He was also considered a hard working and dedicated employee. He had recently received a raise for his success at a job at Cinergy in Carmel. His work was a positive influence in his life.

16. After [Boyd's] death, Dr. Kenneth Barnes diagnosed [Boyd], based on a review of the deposition testimony and police report, as having obsessive compulsive tendencies.

17. Dr. Barnes concluded in his report that [Boyd's] Long–Term [sic] personality issues, the work-related accident, and other factors created a "perfect storm" that caused [Boyd] to commit suicide.

18. Detective Shawn Karr interviewed [Boyd's] wife and daughter a few days after the incident. [Boyd's] wife, stated at that time that her husband was an extreme perfectionist and that there were certain times of the year that he seemed to get very depressed. She stated to the detective that they did not allow their friends or other people outside of the immediate family to know about [Boyd's] depression.

19. [Boyd's] wife further testified at [the] hearing that [Boyd] had periodically suffered from bouts of depression for over 20 years; these bouts of depression were typically seasonal, causing more symptoms in the winter. [Boyd] refused treatment of his depression and often hid the signs and symptoms that he was depressed. However, at the time of the hearing [Boyd's] wife testified that inexplicably [Boyd] had not shown signs of depression prior to his suicide.

20. [Boyd] had previously contemplated suicide. [Boyd's] wife stated in her deposition that she used to be very afraid that she would come home and find him dead. She also admitted that, despite his successes, [Boyd] felt that he had accomplished little in his life.

21. [Boyd] was having difficulty in his personal life. He did not approve of his youngest daughter's recent marriage and was worried that she would not make it home for Christmas. Additionally, [Boyd's] wife was potentially leaving to visit her sick mother in Maryland around Christmas time. In the weeks leading up to the incident, [Boyd] had mentioned these issues to co-workers. [Boyd] commented that on his week off for Christmas that he planned to drink Whiskey all week. Snedegar expressed in his deposition that he believed that the reason for [Boyd's] reaction that night was due to his personal problems at home and not the accident at work.

22. [Boyd's] autopsy indicated that [he] had thyroiditis which is a symptom of depression. Dr. Barnes testified at hearing that he would not rule out the conclusion that [Boyd] was depressed at the time of his death.

23. [Boyd's] possession of a firearm was in violation of the policy of Cinergy, the current company that [Boyd] was working for under con-

tract with [the Company]. [Boyd] was required to follow this policy. However, this rule was not regularly enforced by [the Company] and the policy states that it is only applicable when the contractors are on site. [Boyd] was not on the work site when his death occurred.

24. [Boyd] also violated a [Company] Safety policy by operating a company vehicle after drinking an alcoholic beverage. However, this rule was also not regularly enforced and in fact [Boyd] had been in a previous accident involving a company vehicle after drinking alcohol and was not disciplined by [the Company].

### CONCLUSIONS OF LAW

1. The Indiana legislature imposed the following bar to workers compensation benefits under Ind.Code 22–3–2–8: "No compensation is allowed for an injury or death due to the employee's knowingly self-inflicted injury. . . ." *Id.* [The Company] met its burden of proving that [Boyd's] claim for compensation is barred by this affirmative defense.

2. There is no question that [Boyd's] death was due to a self-inflicted gunshot wound. The evidence also indicates that [Boyd] *knowingly* inflicted his injury. Although [Boyd's] blood alcohol level was relatively high, the witness at the scene testified that [Boyd] appeared to know what he was doing. Furthermore, [Boyd] was a regular drinker which is taken into account when assessing whether his blood alcohol content should be a determinative factor in whether or not he *knowingly* self-inflicted his death.

3. The Indiana Court of Appeals has created a narrow exception to the general bar from compensation when a death is caused by self-inflicted injury. In *Indiana State Police v. Wiessing*, 836 N.E.2d 1038 (Ind.Ct.App.2006), a police officer shot and killed a motorist during a traffic stop and subsequently suffered from post-traumatic stress disorder which set in to [sic] play a "chain of events" which caused him to commit suicide six years later. In *Jackson Hill Coal & Coke Co. v. Slover*, 102 Ind.App. 145, 199 N.E. 417 (1936), an employee suffered severe and disfiguring burns in a mine accident and shot and killed himself with a revolver a few years later. In both of these cases the court concluded that the plaintiff's dependents were not barred from workers compensation benefits.

4. The instant case has two very important distinctions from the case law which has allowed compensation when an employee causes his own death.

5. First, the court in *Wiessing* concluded that the plaintiff suffered from a mental disease that prevented his death from being "knowingly" self-inflicted. *Id.* at 1046. The court found that the question of whether an employee's injury was self-inflicted is uniquely, although not conclusively, a factual matter for the Worker's Compensation Board. *Id.* As concluded above, [Boyd's] injury was "knowingly" self-inflicted. The minor motor vehicle accident was not a traumatic incident that would cause a serious mental aberration such as in *Wiessing* or *Jackson* and the witness who observed [Boyd] believed that he knew what he was doing.

6. The second conclusion that the court made in *Wiessing* was that plaintiff's injury fell under the well settled principle that a subsequent incident or accident which results in a new, different or additional injury is compensable if it is of such nature and occurs under such circumstances that it can be considered as the proximate and natural result of the original injury. *Id.* at 1046. This is referred to as the chain of causation. In *Wiessing,* a traumatic work-related event caused post traumatic stress which then set into play a chain of events that culminated in the plaintiff's suicide.

7. In this case, [Boyd's] suicide was proximately caused by his depression and pre-existing mental health issues and not by an employment related risk. [Boyd] was involved in a very minor motor vehicle accident with no physical injury that would have more than likely caused very little repercussions for his employment. On the other hand, [Boyd] had a history of depression and difficulties in his personal life. Therefore, it is more likely than not that [Boyd's] personal difficulties are what proximately caused the suicide, not his employment.

8. It is doubtful that the Court of Appeals intended to eviscerate the self-inflicted injury portion of Ind.Code 22–3–2–8 by setting precedent that allows an employee to recover workers compensation benefits as long as the work environment is one small factor, among other personal factors, in an employee's decision to take his own life. There is not a strong enough connection to the employment in this case to overcome the public policy that led to the legisla-ture's specific delineation that such claims should be barred.

Appellant's App. at 63–68.

In addition, the single hearing member concluded that although Jane established that Boyd's suicide occurred in the course of his employment, she failed to meet her burden of proving that Boyd's suicide was an accident arising out of his employment. *Id.* at 68–71. *See* Ind.Code § 22–3–2–2(a) (requiring employers to pay and employees to accept "compensation for personal injury or death by accident arising out of and in the course of the employment[,]" and stating that the "burden of proof is on the employee").

Jane appealed the single hearing member's decision to the full Board, a majority of which affirmed it and specifically adopted the single hearing member's findings of fact and its conclusion that the Company met its burden of proving that Boyd's death was knowingly self-inflicted (conclusion 1). *Id.* at 6–7. The Board did not indicate that it adopted conclusions 2–7, which are related to conclusion 1. Nor did it adopt the single hearing member's conclusions regarding Jane's failure to prove that Boyd's suicide occurred by accident arising out of and in the course of employment. Jane appeals.

## Discussion and Decision

■■■ The Board, as the trier of fact, has a duty to issue findings that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. *Shultz Timber v. Morrison,* 751 N.E.2d 834, 836 (Ind.Ct.App.2001), *trans. denied.* In reviewing the Board's decision, we first determine whether there is any competent evidence of probative value to support the Board's findings, and we then assess whether the findings are sufficient to support the decision. *Id.* In so doing, we must not reweigh the evidence or assess witness credibility. *How-*

*ard v. U.S. Signcrafters,* 811 N.E.2d 479, 481 (Ind.Ct.App.2004). In addition, we must disregard all evidence unfavorable to the decision and consider only the evidence and reasonable inferences drawn therefrom that support the Board's decision. *Inland Steel Co. v. Pavlinac,* 865 N.E.2d 690, 697 (Ind.Ct.App.2007). We will not disturb the Board's factual determinations unless the evidence is undisputed and leads inescapably to a contrary result. *Id.*[1] To the extent any issue involves a conclusion of law based on undisputed facts, it is reviewed de novo. *DePuy, Inc. v. Farmer,* 847 N.E.2d 160, 164 (Ind.2006).

The Worker's Compensation Act ("WCA") was enacted to provide compensation to workers suffering from work-related injuries without requiring them to satisfy the elements necessary to recover under tort law. The WCA provides "compensation for personal injury or death by accident arising out of and in the course of employment." Ind.Code § 22-3-2-2 (2004). However, injury caused by certain types of employee behavior will bar recovery of benefits. Indiana Code Section 22-3-2-8 provides as follows:

No compensation is allowed for an injury or death *due to the employee's knowingly self-inflicted injury,* his intoxication, his commission of an offense, his knowing failure to use a safety appliance, his knowing failure to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work, or his knowing failure to perform any statutory duty. *The burden of proof is on the defendant.*

(Emphases added.)

■ "Whether an employee's injury was [knowingly] self-inflicted is uniquely (although not conclusively) a factual matter for the Board. The decision is a matter of law only when the evidence and facts presented at the hearing are uncontradicted and support but one reasonable conclusion." *Indiana State Police v. Wiessing,* 836 N.E.2d 1038, 1046 (Ind.Ct.App.2006) (citations, brackets, and quotation marks omitted), *trans. denied.* Here, Jane argues that the Board's conclusion that the Company established that Boyd's death was due to his knowingly self-inflicted injury is not supported by substantial evidence and ignores existing law. Jane does not challenge any of the findings of fact.[2]

1. The Company asserts that Jane is appealing from a negative judgment. "It is the burden of the claimant to prove a right to compensation under the Worker's Compensation Act." *Jablonski v. Inland Steel Co.,* 575 N.E.2d 1039, 1041 (Ind.Ct.App.1991), *trans. denied* (1992). In *Perez v. U.S. Steel Corp.,* 428 N.E.2d 212 (Ind.1981), our supreme court noted that because a claimant bears the burden of proof, the unsuccessful claimant who seeks to challenge the denial of his or her application appeals from a negative judgment. *Id.* at 216. Here, however, the Company bore the burden of proving its affirmative defense. Because Jane is appealing the Board's conclusion on an issue for which the opposing party bore the burden of proof, we decline to find that she is appealing from a negative judgment. *Cf. Carlson Wagonlit Travel, Inc. v. Moss,* 788 N.E.2d 501, 503 (Ind.Ct.App.2003) (noting that where lower court found against party on its affirmative defense, that party received a negative judgment).

2. Although Jane challenges conclusions 2, 4, 5, 6, and 7 of the single hearing member's decision, the Board did not adopt those conclusions. We reject Jane's assertion that because the Board adopted the conclusion that the Company met its burden to prove that Boyd's death was knowingly self-inflicted, it necessarily adopted conclusions 2 through 7. We find that the findings of fact are sufficient to provide us with meaningful appellate review of conclusion 1. *See* Ind.Code § 22-3-4-7 ("the full board ... shall make an award and file the same with the finding of the facts on which it is based"); *Dial X–Automated Equip. v. Caskey,* 826 N.E.2d 642, 644 (Ind.2005) (finding that where board merely

Indiana courts have had few opportunities to address whether worker's compensation benefits are barred where the employee committed suicide. However, *Indiana State Police v. Wiessing*, 836 N.E.2d 1038, is instructive. Wiessing, an Indiana state trooper, accidentally shot and killed a motorist during a routine traffic stop. Six years later, Wiessing died from a self-inflicted gunshot wound to the head. Wiessing's descendants filed an application for adjustment of claim, which was denied by the single hearing member.

The descendants appealed, and the full board reversed the single hearing member's decision. The full board found that Wiessing suffered from post-traumatic stress disorder and depression as a result of the accidental killing of the motorist. The full board also found that the descendants had established that the chain of events leading to Wiessing's death was set in motion by the shooting death of the traffic stop detainee. The full board concluded that Wiessing

> sustained personal injury by accident arising out of and in the course of his employment with Defendant, the injury so sustained was that of post-traumatic stress disorder, diagnosed June 15, 1995. Because Trooper Wiessing's suicide resulted from this condition, it is not considered to be a self-inflicted injury under Indiana Code 22–3–2–8.

836 N.E.2d at 1043–44. The Indiana state police appealed.

In reviewing the board's decision, the *Wiessing* court recognized that the case involved two separate injuries: first, the post-traumatic stress disorder; and second, the suicide. Thus, the court focused on the "chain of causation test" and whether Wiessing's suicide was proximately caused by the accidental shooting of the motorist. In this regard the *Wiessing* court noted,

> It seems to be well settled that a subsequent incident or accident which results in a new, different or additional injury is compensable if it is of such nature and occurs under such circumstances that it can be considered as the proximate and natural result of the original injury It is well settled that where the primary injury arises out of the employment, every consequence which flows from it likewise arises out of the employment.
>
> On the other hand the subsequent incident or accident may be such as to constitute an independent intervening agency which breaks the chain of causation between the two injuries and relieves the employer of responsibility for the latter. And this is true even though the first injury may have contributed to the second accident to some extent. Cases may arise where the elements of time and space and intervening causes may be so involved that the second injury could not be said to be the proximate, natural, and probable result of the original accident, or the second accident may so predominate that it overshadows the original cause.
>
> . . . .
>
> Whether the second accident, in the case before us, was the proximate and natural result of the original injury or whether it was the proximate result of the appellant's negligence and therefore

---

adopted decision of the single hearing member without comment, "[s]uch adoption is sufficient to attribute to the full board the explicit written *findings* of the single hearing member and to permit appellate review accordingly.") (emphasis added); *compare*

*Young v. Marling*, 900 N.E.2d 30, 34–35 (Ind. Ct.App.2009) (stating that evidence recited in single hearing member's decision as well as findings and conclusions set out therein would be examined where board found that hearing officer's decision should be adopted).

should be regarded as an independent intervening cause, was a question of fact for the Industrial Board, to be decided in view of all the circumstances, and its findings in that regard must be sustained, even though the evidence is undisputed, if there is any legitimate theory applicable to the facts on which the award can be upheld.

*Id.* at 1046–47 (quoting *Yarbrough v. Polar Ice & Fuel Co.,* 118 Ind.App. 321, 324–25, 79 N.E.2d 422, 423–24 (1948)) (citations and quotation marks omitted). The *Wiessing* court found that there was evidence to support the board's decision, including the following expert testimony:

Thus, based on the available information and the records reviewed, Mr. Wiessing's suicide appears to be the culmination of his inability to deal with the psychological consequences of his involvement in 1994 police action shooting as well as his inability to manage the stress and adjustment issues associated with continuing his career as a law enforcement officer following the April 1994 events.

*Id.* at 1047–48. The court therefore affirmed the board's decision. *Id.* at 1048.[3]

█ We believe, and the parties appear to agree, that the chain of causation test is key to resolving the case at bar. The principle underlying the chain of causation test may be described as follows: "[W]here an injury and its consequences directly result in a worker's loss of normal judgment and domination by a disturbance of the mind, causing suicide, his or her own suicide is compensable." 9A Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 136:52, at 136–87 (3d ed.2005). The elements of the chain of causation test are as follows:

1. There was initially a work-related injury as defined by the Worker's Compensation Act.

2. Which injury directly caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment.

3. Which disturbance resulted in the employee's suicide.

*Id.* § 136:52, at 136–88 (footnotes omitted). Thus, where the chain of causation test is satisfied, an employee's suicide will not have been committed "knowingly" for purposes of Indiana Code Section 22–3–2–8.[4]

Although it is sometimes said that the suicide must stem from a "compensable physical injury," this statement is unduly restrictive. The correct statement is that the suicide must be the result of some injury arising out of and in the course of employment. In other words, *at the very outset there must be found an injury which itself arose out of and*

---

**3.** This Court also upheld the full board's finding that suicide was compensable in *Jackson Hill Coal & Coke Co. v. Slover,* 102 Ind.App. 145, 199 N.E. 417(1936). However, that case was decided before the chain of causation test was adopted. In contrast, this Court has upheld the full board's finding that suicide was not compensable in *Henry v. Schenk Mechanical Contractors., Inc.,* 169 Ind.App. 178, 346 N.E.2d 616 (1976). In *Taylor v. Director Public Works & Supply Superintendent of Public Buildings & Property,* 121 Ind.App. 650, 100 N.E.2d 831 (1951), this Court upheld the full board's conclusion that the decedent's suicide was not caused by accident arising out of and in the course of his employment. In neither *Henry* nor *Taylor* was there an issue involving the mental state or mental injury of the decedent.

**4.** The parties discuss at length whether Boyd "knowingly" committed suicide. Like the single hearing member's conclusion 2, they focus on whether Boyd was aware of what he was doing. Awareness of action and consequence is not, however, the focus of whether a suicide was committed knowingly under the chain of causation test. Rather, the focus is on whether the employee suffered an injury causing a mental disorder of such seriousness that normal and rational judgment are suspended.

*in the course of employment, and then the suicide must be traced directly to it.* If there is no such employment connected injury setting in motion the causal sequence leading to the suicide, or when there are far stronger nonemployment influences accounting for the suicide, the suicide is a complete defense.

2 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 38.04, at 38–16 (2009) (footnotes omitted) (emphasis added).

With regard to *Wiessing* and the application of the chain of causation test, we note that the three aforementioned elements existed: (1) Wiessing sustained a personal injury, that is, post-traumatic stress disorder, by accident arising out of and in the course of his employment; (2) the post-traumatic stress disorder created a disturbance of his mind such that his normal rational judgment was overruled; and (3) the disturbance resulted in his suicide.

Turning to the case at bar, Jane acknowledges that "the critical inquiry is whether Boyd's death occurred as a result of a prior or primary injury that arose out of employment." Appellant's Br. at 20; *see also* Appellant's Reply Br. at 3 ("[T]he relevant analysis in employee suicide cases under the chain of causation rule is whether the suicide is a consequence which flowed from an injury which arose out of employment."). In this regard, the parties vigorously dispute whether Boyd sustained an initial injury arising out of and in the course of his employment. The Company asserts that although there were a series of events, Boyd did not sustain an "injury" as contemplated by the WCA. Jane contends that Boyd suffered a mental injury (severe, acute depression) resulting from the wreck of his company truck. To support her contention, Jane cites Dr. Barnes's report and the testimony of Snedegar, his wife, and Miles, and she argues

that the Company presented no evidence to explain Boyd's change in demeanor immediately following the wreck other than the wreck itself.

However, a change in demeanor is not equivalent to a mental injury. We cannot agree with Jane that the evidence inescapably leads to the conclusion that Boyd suffered a "mental injury" from the truck accident. Although Jane claims that the only difference between the facts in this case and the facts in *Wiessing* is timing, that is simply not accurate. In *Wiessing,* the employee was diagnosed with post-traumatic stress disorder, a medically recognized mental disorder, that he sustained by accident arising out of and in the course of employment. We cannot equate post-traumatic stress disorder with Boyd's distress, albeit extreme, following the truck accident. Also, we observe that although the evidence shows that Boyd suffered from depression in the past and may have been suffering from depression at the time of the truck accident and had obsessive-compulsive tendencies, there is no indication that his depression or obsessive-compulsive tendencies were caused by accident arising out of and in the course of employment.

Jane also argues that the facts of this case are analogous to those in *Globe Security Systems Co. v. Workmen's Compensation Appeal Board,* 518 Pa. 544, 544 A.2d 953 (1988). Aside from the fact that we are not bound by decisions from other jurisdictions, we also find that *Globe* is factually distinguishable. In *Globe,* a security guard prevented the robbery of a liquor store and detained the two would-be robbers outside the store to wait for police to arrive. While waiting, the guard's gun, which was pointed at the neck of one of the detainees, accidentally discharged and severely injured the man. The guard "then re-entered the lobby of the liquor store, stood alone for about two minutes, exited

the store and, using the same gun, fatally shot himself in the head." *Id.* at 954. The guard's wife filed for worker's compensation benefits. Her expert testified that the guard suffered an "acute psychotic episode," similar to "hysterical [psychoses] that soldiers experience in combat." *Id.* at 955. The referee found that the shooting of the robber created a psychosis which caused the security guard to take his own life, and the full board affirmed, concluding that the guard "was out of touch with reality as a result of the shooting and, as such, his suicide was not intentional." *Id.* On appeal, the *Globe* court affirmed the full board, concluding that there was substantial competent evidence to support the award of benefits under the chain of causation test. *Id.* at 957.

As we stated with regard to *Wiessing,* we cannot equate Boyd's extreme emotional distress to an acute psychotic episode. Nor can we agree with Jane that Dr. Barnes's report is evidence that Boyd suffered a mental injury. Our review of the report shows that it sets forth many reasons for Boyd's suicide, including job-related factors, focusing on causation, but it does not provide evidence that Boyd suffered a *mental injury* because of the truck accident. Tr. at 557–59, Ex. 20.

█ The evidence shows that Boyd had suffered from depression in the past, often during the Christmas holidays. The autopsy showed he had thyroiditis, which is a symptom of depression. He had obsessive-compulsive tendencies. On the night

of the suicide, he had been drinking. After his accident, he was visibly upset and made comments such as, "The guys are never going to let me live this down[,]" and, "I have worked all of my life and I have nothing." Appellant's App. at 64. Thus, there is evidence that Boyd was upset and that his reaction to the truck accident may have been affected by depression, obsessive-compulsive tendencies, and drinking, but not necessarily that he suffered a mental injury as contemplated by the WCA.[5] Without an initial work-related injury, the chain of causation test is not satisfied. As previously noted, "Whether an employee's injury was [knowingly] self-inflicted is uniquely (although not conclusively) a factual matter for the Board. The decision is a matter of law only when the evidence and facts presented at the hearing are uncontradicted and support but one reasonable conclusion." *Wiessing,* 836 N.E.2d at 1046. We conclude that the evidence and the reasonable inferences drawn therefrom support the Board's decision that the Company carried its burden to prove that Boyd's death was caused by his knowingly self-inflicted injury. Accordingly, we affirm the Board's decision denying Jane's claim for worker's compensation benefits.

Affirmed.

MAY, J., and BROWN, J., concur.

---

5. Jane argues that the Board ignored the well-established rule that an employer has to take each employee as it finds him. *See U.S. Steel Corp. v. Spencer,* 655 N.E.2d 1243, 1247 (Ind.Ct.App.1995) ("an 'employer takes an employee as he finds him, if he takes him at all.' ") (quoting *Goodman v. Olin Matheison Chem. Corp.,* 174 Ind.App. 396, 405, 367 N.E.2d 1140, 1146 (1977)), *trans. denied* (1996). This is applicable where an "injury otherwise compensable under the Workmen's Compensation Act entitles an employee to benefits commensurate with the total disability sustained, including the aggravation or triggering of latent pre-existing conditions." *Hansen v. Von Duprin, Inc.,* 507 N.E.2d 573, 577 (Ind.1987). Here, we have found that the evidence does not necessarily show that Boyd sustained an initial mental injury compensable under the WCA. Accordingly, the aforementioned principle is not applicable to this case.